**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

SHARON HAWKINS, derivatively on behalf of    :
MEDAPPROACH, L.P., and individually,    :
    :
    **Plaintiff,**    :
    :
-against-    :
    :
MEDAPPROACH HOLDINGS, INC., and W.    :
BRADLEY DANIEL    :
    :
    **Defendants.**    :
    :
-and-    :
    :
MEDAPPROACH, L.P.,    :
    :
    **Nominal Defendants.**    :

---------------------------------------------------------------x

1:13-cv-05434 (ALC) (DF)

**MEMORANDUM OPINION**

**ANDREW L. CARTER, JR., United States District Judge:**

## I.   INTRODUCTION

This case involves a complex web of entities created to invest in the development,

production and sale of the abortion drug mifepristone.  Plaintiff, who has invested in this

endeavor through a limited partnership, asserts derivative and individual claims against the

limited partnership's corporate general partner and sole shareholder.  The claims fall into three

general categories.  *First*, Plaintiff asserts derivative claims for a declaratory judgment, breach of

fiduciary duty and unjust enrichment in connection with a purportedly invalid voting proxy held

by Defendants (Counts I, II and III of the Amended Complaint).  *Second*, Plaintiff asserts another

a claim of breach of fiduciary duty in connection with Defendants' alleged bad-faith refusals to

alter a tax-inefficient corporate structure (Count IV).  *Third*, Plaintiff asserts individual claims of

breaches of fiduciary duty and contract based on Defendants withholding of distributions on

Plaintiff's limited partnership investments.  (Count V and VI).  The Defendants' have filed a

motion to dismiss each of the aforementioned claims for failure to state a claim on which can be

relief can be granted.  (ECF Nos. 7 & 13.)  For the reasons stated below, the motion is

GRANTED IN PART and DENIED IN PART.

## II.    PLAINTIFF'S CLAIMS

The drug RU-486, i.e., mifepristone, was invented and patented in 1980 by a French

pharmaceutical company called Roussel-Uclaf.  (Am. Compl ¶ 10.)  In 1994, Roussel-Uclaf

assigned the rights to the manufacture, marketing and distribution of RU-486 in the United States

(the "Project") to an international research group based in New York called Population Council,

Inc. ("Popco") (Am. Compl. ¶ 12.)  In December 1995, Popco granted a sublicense for the

administration of the Project to Joseph Pike, a lawyer and businessman with whom it had

previously worked.  (Am. Compl. ¶ 14.)

Pike created a complicated structure of interlocking entities that would finance and

administer the project while maintaining anonymity.  He created Danco Laboratories, Inc., a

Cayman Islands corporation, and issued it a sublicense for the manufacture and distribution of

the drug.  (Am Compl. ¶ 16.)  Danco Laboratories, Inc. was later succeeded in interest by Danco

Laboratories LLC, a Delaware limited liability company.  (Am. Compl ¶ 16.)  (The two are each

referred to herein to as "Danco Labs".)  Danco Labs was headquartered in New York and owned

through an intermediary by Neogen Investors LLP ("Neogen"), a California limited partnership

that Pike created to raise money for the Project through the sale of limited partnership interests.

(Am. Compl. ¶¶ 17, 20.)  Neogen was eventually succeeded in interest by Danco Investor Group,

L.P., also a California limited partnership.  (*Id.*)  At all relevant times, the general partner of

Neogen/Danco Investors was N.D. Management, a Delaware corporation originally formed by Mr. Pike as a Cayman Islands corporation. (Am. Compl. ¶ 18.)

In 1995, Gregory Hawkins, the husband of Plaintiff Sharon Hawkins, was introduced to the Project and to Defendant W. Bradley Daniel, who owned a Tennessee corporation called Bio-Pharm Investments, Inc. ("Bio-Pharm") (Am. Compl. ¶¶ 21-22.) Daniel had created Bio-Pharm as a vehicle to invest in the Project through the corporate purchase of interests in Neogen. (Am. Compl. ¶ 23.) After meeting Daniel, Mr. Hawkins eventually agreed to invest in the Project through a Bio-Pharm purchase. (Am. Compl. ¶ 23.) Mr. Hawkins also later agreed to invest in the Project via a purchase of limited partnership interests in the now-defunct MedApproach L.P. ("Old MedApproach"), a Tennessee limited partnership which Daniel also created to hold funds for investment in the Project through purchases of interests in Neogen. (Am. Compl. ¶¶ 24-26.) By 1997, Pike had raised approximately $14 million for the Project, a substantial portion of which had been invested by Mr. Hawkins, both through Old MedApproach and directly in DancoLabs. (Am. Compl. ¶¶ 28-29.).

### A. The Proxy

In 1996, a dispute over ownership and control of the Project arose between Popco and Pike, and it led to a lawsuit by Popco seeking to oust Pike from the Project. (Am. Compl. ¶ 31.) The parties reached a settlement in early 1997, pursuant to which Old MedApproach would purchase from Pike 75% of the shares of N.D. Management. (Am. Compl. ¶¶ 35-36.) This acquisition was funded by a loan from Mr. Hawkins to Old MedApproach. (Am. Compl. ¶ 38.) However, as the transfer would not be complete until Pike was paid in full, Pike, as a stopgap measure, executed an irrevocable proxy governed by California law giving Defendant Daniel and two others the right to vote all the shares. (Am. Compl. ¶ 37.) Pike retained 25% non-voting

3

ownership of the shares in the company.  (Am. Compl. ¶¶ 36, 38.)  Although the financial

obligations to Pike were fulfilled in 1999, Plaintiff alleges that Daniel, rather than dissolving or

abdicating the proxy, then executed a new proxy permitting him to receive a proxy holder's fee

of several hundred thousand dollars a year.  (Am. Compl. ¶ 40.)  Plaintiff alleges that she has

requested that Daniel relinquish the proxy in the last three years to no avail.  (Am. Compl. ¶ 40.)

**B.  Taxation**

In 1998, Mr. Hawkins assigned all of his direct and indirect interests in the Project to his

wife, Plaintiff Sharon Hawkins ("Hawkins").  (Am. Compl. ¶ 41.)  In 1999, following Old

MedApproach's official acquisition of the N.D. Management stock, Old MedApproach was

dissolved and its assets were transferred to three limited partnerships formed under Delaware

law.  (Am. Compl. ¶ 42.)  The three partnerships were: MedApproach LP ("MedApproach"),

which holds the 75% interest in N.D. Management, DIG Equity, which holds Old

MedApproach's interests in Danco Investors, and DIG Special Assets, which holds the portfolio

of loans made to Danco Labs.  (Am. Compl. ¶ 42(a).)   Relatedly, Daniel also at this time formed

Defendant MedApproach Holdings ("Holdings"), a wholly owned Delaware corporation, which

would assume a Bio-Pharm-like role as the general partner of all three new partnerships.  (Am.

Compl. ¶¶ 7, 42(b).)  As a result of the reorganization, Plaintiff held an approximate 88% interest

in MedApproach, a 60% interest in DIG Equity and a 100% in DIG Special Assets.  (Am.

Compl. ¶ 43.)

As a limited partnership, all of MedApproach's profits and losses flow directly to

individual partners of MedApproach, who then pay taxes on their respective shares.  (Am.

Compl. ¶ 44.)  However, N.D. Management, as a "C corporation," pays state and federal taxes on

distributions made from Danco Investors before that money is in turn distributed to

4

MedApproach and eventually to MedApproach's limited partners.  (Am. Compl. ¶ 45.)  Thus, the distributions to MedApproach's limited partners are effectively subjected to a regime of double taxation.

Plaintiff asserts that Defendant Daniel has acknowledged that the taxation arrangement is wasteful but self-interestedly refuses to take steps to remedy the situation.   For example, she alleges that, in 2009, Mr. Daniel circulated a memorandum to the limited partners acknowledging the taxation was wasteful and proposing to distribute N.D. Management shares directly to the limited partners, but that he subsequently refused to implement that proposal. (Am. Compl. ¶ 46.)  She also alleges that in 2011, 2012 and 2013 she and Daniel discussed a prospective solution to the problem, but that Daniel indicated that he would not adopt any corrective measure unless he was allowed to remain in control of the N.D. management stock. (Am. Compl. ¶¶ 46-47.)

### C.  Withheld Distributions

On December 20, 2011, Defendant Holdings filed a lawsuit against Hawkins and her husband in the United States District Court for the Middle District of Tennessee. *MedApproach Holdings v. Hawkins*, No. 3:11cv0119 (M.D. Tenn. filed Dec. 20, 2011).   Holdings alleged that Mr. and Mrs. Hawkins deliberately misrepresented their interest in several LLCs in order to induce Daniel to transfer their interest in MedApproach LP, DIG Equity and DIG Special Assets to other entities and to avoid paying management fees to Holdings.  The Amended Complaint alleges that, shortly after the lawsuit was filed, Defendants began using their position as general partner of all three limited partnership to withhold distributions from Mrs. Hawkins.  (Am. Compl. ¶ 50.)  Plaintiff claims this was in violation of Section 6.14 of the limited partnership agreements of all three entities, which provide that the General Partner does not have the

5

authority to "possess Partnership property or assign rights to specific Partnership property for other than a Partnership purpose." (Am. Compl. ¶ 53.) Defendants subsequently provided Mrs. Hawkins approximately $1.3 in withheld distributions, although Plaintiff has yet to confirm that this was the amount withheld. (Am. Compl. ¶ 51.)

### D.  Procedural History

Plaintiff commenced the present action on August 2, 2013, filing an amended complaint on October 25, 2013. Plaintiff asserts derivative claims on behalf of MedApproach with respect to the proxy (Counts I-breach of fiduciary duty, II-declaratory judgment and III-unjust enrichment) and the taxation structure (Count IV-breach of fiduciary duty), as well as individual claims of breach of contract and fiduciary duty with respect to the withheld distributions (Counts V and VI, respectively). The Amended Complaint also asserts that Defendant Holdings is the alter ego of Daniel, and that a demand on MedApproach would be futile because Holdings "cannot exercise independent judgment to consider a demand against it as the general partner of MedApproach." (Am. Compl. ¶ 74.)

On November 27, 2013 Defendants filed a Motion to Transfer the Case to the Middle District of Tennessee or, in the alternative, to Dismiss the Amended Complaint ("the Motion") for failure to state a claim on grounds of legal insufficiency as to all claims, and untimeliness as to the proxy and taxation claims (Counts I-IV). On May 12, 2014, Judge Baer issued an order denying the transfer portion of the motion and taking the dismissal portion under advisement. (ECF No. 51.) On June 18, 2014, this action was transferred to the undersigned after Judge Baer's unfortunate passing.

6

### III.   DISCUSSION

#### A.  Applicable Legal Standards

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In determining the legal sufficiency of the Amended Complaint, this Court "must accept as true all factual allegations and draw from them all reasonable inferences." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).  This Court, however, is not bound by legal conclusions masquerading as factual allegations. *See id.* (quoting *Rothstein*, 708 F.3d at 94); *see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Further, although this Court's consideration of the Motion would ordinarily be limited to the facts as alleged in four corners of the Amended Complaint, this Court can properly consider the MedApproach Limited Partnership Agreement (hereinafter the "MedApproach LPA"), because the Amended Complaint relies on "its terms and effect" with respect to the withheld distributions claims. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).[1]

---

[1]      Conversely, the Court finds that it cannot properly consider the 1998 Letter Agreement between the parties (attached as Ex. B to November 27, 2013 Declaration of Jeffrey A. Simes (hereinafter "Simes Decl.") and Defendants' concomitant argument that it renders Plaintiff's withholdings based claims for breaches of contract and fiduciary duty legally insufficient.  While, as a signatory of the Letter Agreement, Plaintiff likely was on notice of and/or is in possession of it, this Court cannot conclude, as is required, that Plaintiff relied on it in drafting the complaint. *See Chambers*, 282 F.3d at 153 ("Because

Finally, as relevant here, a motion to dismiss a claim as untimely is generally construed as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See, e.g., Ackerman v. Ackerman*, 549 F. App'x 45, 45 (2d Cir. 2014) (summary order). The "[d]efendants bear the burden of establishing that the limitations period has expired since Plaintiff's claim accrued." *Bonano v. Staniszewski*, No. 12-CV-5879 (DLI)(LB), 2014 WL 3643434, at *6 (E.D.N.Y. July 21, 2014) (citing *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). Thus, a defendant's motion to dismiss will be granted "only if the complaint 'clearly shows the claim is out of time.'" *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

## B. Timeliness

### 1. Breach of Fiduciary Duty Proxy Claim (Count I)

The statute of limitations for a claim of a breach of fiduciary duty or contract in Delaware is three years from the date on which the cause of action accrued. *See* 10 Del. C. § 8106(a); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).[2] As the Plaintiff filed this suit on August 2, 2013, the claim must have accrued before August 2, 2010 in order for the claim to be eligible for a statute of limitations dismissal. A cause of action is deemed to have

---

this standard has been misinterpreted on occasion we reiterate here, that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

[2]     As the parties' briefs assume that Delaware governs the statute of limitations and substantive law issues herein, the Court will apply it without a choice-of-law inquiry. *See Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 514 n. 4 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs the issues of contract interpretation and statute of limitations here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

"accrued" at the time of the wrongful act, irrespective of whether a plaintiff is on notice. *Wal-Mart Stores,* 860 A.2d at 319. Additionally, under the "continuing wrong" doctrine, where the alleged wrongs are so "inexorably intertwined" or of a "similar, if not [the] same, character," the cause of action will accrue as of the date of the initial wrongful act. *See Price v. Wilmington Trust Co.*, Civ. A. No. 12746, 1995 WL 317017, at *2 (Del. Ch. May 19, 1995) (citing *Ewing v. Beck*, 520 A.2d 653, 662 (1987)). If, however, "a continuing wrong can be segmented, the applicable statute of limitations will apply to each alleged wrong and not to the course of wrongful conducts as a whole." *Id.* at (citing *Ewing*, 520 A.2d at 664). In this case, Defendants argue that Plaintiff's proxy-related claim of breach of fiduciary duty accrued in 1999 when the proxy was executed, while Plaintiff argues that Defendants have committed independent wrongful acts each time they refused to relinquish the proxy in the last three years so as to make their claim timely.

Accepting the allegations of the Amended Complaint as true, the Court agrees with the Defendants' that this claim is untimely. The Amended Complaint alleges that, in 1999, Daniel executed documents on behalf of Old MedApproach allowing him to receive a proxy holder's fee from N.D. Management, and that this proxy was invalid from the date of inception. (Am. Compl. ¶ 40.) Under Delaware law, Daniel's execution of these documents was thus the wrongful act, and when the claim of breach of fiduciary duty accrued. *See Teachers' Retirement System of La. v. Aidinoff*, 900 A.2d 654, 665 (Del. 2006) (noting that when a contract "is contended to have resulted from fiduciary misconduct, the statute of limitations begins running at the time of the decision to contract"). Daniel's performance under the contract, including his receipt of fees under the proxy or his refusal to relinquish it are clearly acts that are "inexorably intertwined" and a "natural consequence" of his execution of the documents. *See Price*, 1995

9

WL 317017, at *2, *3; *Teachers Retirement*, 900 A.2d at 665 (observing that "performance under the contract" is not generally considered to be a segmentable wrong, but rather a "*natural consequence flowing from the original decision* . . . to obligate the corporation to the contract") (emphasis added).

Plaintiff strangely relies on *Teachers' Retirement* in arguing to the contrary. There, the Delaware Supreme Court held that a board's continued wrongful performance on a contract could be segmented from the original execution of the contract because the relevant contract contained an annual termination option. *See id.* at 666. The case *sub judice* is distinguishable because Plaintiff does not allege a similar contractual option to terminate the proxy. *See id; see also In re Coca-Cola Entrs. Inc.*, C.A. No. 1927-CC, 2007 WL 3122370, at *6 n.45 (Del. Ch. Oct. 17, 2007) (dismissing breach of fiduciary duty claim predicated on contract on grounds that case was distinguishable from *Teachers Retirement* because its involved a "perpetual" contract and not one with an annual right of termination).

The Court having found Plaintiff's proxy-related breach of fiduciary duty claim untimely under Delaware law, it remains only for it to determine whether the Amended Complaint adequately pleads facts supporting the application of the recognized tolling doctrines of inherently unknowable injury, fraudulent concealment or equitable tolling. *See, e.g., Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 42 (Del. 2012) ("Where, as here, a 'complaint asserts a cause of action that on its face accrued outside of the statute of limitations,' the plaintiff bears the burden of showing why the statute of limitations should be tolled." (quoting *Wal-Mart*, 860 A.2d at 319)). That inquiry need only be a perfunctory one in this case, however, as Plaintiff has not pleaded any circumstances pertaining to her lack of notice of the accrual of the claim, a

feature of each one of the tolling exceptions.[3]   Accordingly, Plaintiff's claim for breach of

fiduciary duty is hereby dismissed, though the Court will grant Plaintiff leave to replead the

claim with facts supporting the application of a recognized tolling doctrine under Delaware law.

*See* Fed. R. Civ. P. 15(a); *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 450 (E.D.N.Y.

2012).

### 2. *Declaratory Judgment and Unjust Enrichment (Counts II and III)*

In contrast to Plaintiff's claim of breach of fiduciary duty, Plaintiff's claims of unjust

enrichment and for a declaratory judgment in connection with the proxy sound in equity.   Under

Delaware law, the timeliness of such claims is governed by the doctrine of laches, which is

defined as an "unreasonable delay by the plaintiff in bringing suit after the plaintiff learned of an

infringement of his rights, thereby resulting in material prejudice to the defendant."   *Reid v.*

*Spazio*, 970 A.2d 176, 182 (Del. 2009).   To determine whether there has been an unreasonable

delay, courts, absent "unusual conditions or extraordinary circumstances," apply the analogous

statutory limitation period as the presumptive period.   *See Levey v. Brownstone Asset Mgmt*, 76

A.3d 764, 770 (Del. 2013) (noting five-factor test Delaware courts utilize to determine whether

unusual conditions or extraordinary circumstances exist).   A complaint filed outside of this

presumptive period will be dismissed unless it contains sufficient allegations supporting tolling

---

[3]        *See, e.g., Stevanov v. O'Connor*, Civil Action No. 3820-VCP, 2009 WL 1059640, at *9 (Del. Ch. Apr. 21, 2009) (noting that, "[u]nder doctrine of inherently unknowable injury, the statute of limitations will be tolled until the point when an injury becomes empirically discoverable," and that under fraudulent concealment doctrine, "the statute of limitations will be tolled if there was an affirmative act of concealment [of the injury from a plaintiff]"); *Bean v. Fursa Capital Partners, LP*, C.A. No. 7566-VCP, 2013 WL 755792, at *6 (Del. Ch. Feb. 28, 2013) (noting that "under the doctrine of equitable tolling, the statute will not run 'while plaintiff has reasonable relied upon the competence and good faith of a fiduciary' . . . . until the [plaintiff] 'knew or had reason to know of the facts constituting the wrong'") (alteration in original) (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007)).

under one of the three aforementioned doctrines. *See, e.g., Bean v. Fursa Capital Partners, LP*, C.A. No. 7566-VCP, 2013 WL 755792, at *6 (Feb. 28, 2013) (dismissing presumptively untimely complaint on grounds of laches because complaint "contain[ed] no allegations that Defendants engaged in misrepresentation that would have prevented [Plaintiff] from discovering the alleged wrong . . . or that would support a reasonable inference that the statute of limitations would have been tolled under any theory"); *LinkCo v. Inc. v. Akikusa*, 615 F. Supp. 2d 130, 142 (S.D.N.Y. 2009) (nothing that it has "been held in this district and Circuit that the defense of laches may be resolved on a motion to dismiss where it is clear on the face of the Complaint that 'the plaintiff can prove no set of facts to avoid the insuperable bar'" (quoting *Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*, No. 08 Civ. 3157, 2008 WL 4974800, at *5 (S.D.N.Y. Nov. 24, 2008)).

Applying these principles, the Court finds that Plaintiff's claims of unjust enrichment and declaratory claims are presumptively untimely. As a preliminary matter, the analogous statute of limitations for these claims is Section 8106's three-year period applicable to claims for breaches of fiduciary duty, *see, e.g., Halpern Med Servs., LLC v. Geary*, C.A. No. 6679-VCN, 2012 WL 691623, at *3 (Del. Ch. Feb 14, 2012), so the timeliness inquiry is identical to that in Section III-A-1, *supra*. Thus, given that Plaintiff, as indicated above, has not alleged any facts supporting the application of any recognized tolling exception, or the inapplicability of the analogous statute of limitations, these claims are likewise subject to dismissal. *See, e.g., Bean*, 2013 WL 755792, at *6. However, the Court also grants Plaintiff leave to replead this claim to include factual allegations supporting the existence of either unusual conditions or extraordinary circumstances which would warrant a departure from applying the analogous statutory period for breach of fiduciary duty and/or support the application of a recognized tolling exception.

### 3.  *Breach of Fiduciary Duty Taxation Claim (Count IV)*

Defendants' argue that Section 8106 similarly bars Plaintiff's claims for breach of

fiduciary duty predicated on the double-taxation structure because the alleged wrongful act is

essentially the incorporation of N.D. management more than 18 years ago.  (*See* Defs.' Mot. at

19.)  Accrual is judged by the factual allegations of a complaint, however, and the Court is to

afford the plaintiff the benefit of every reasonable inference.  *See, e.g.*, *Sbarra v. Port Auth. of*

*N.Y. and N.J.*, No. 10 Civ 8580(CM), 2011 WL 4344078, at *5 (S.D.N.Y. Sept. 09, 2011).  In

this case, the Amended Complaint alleges that Defendants' wrongful acts are their refusals to

adopt a restructuring plan that would benefit MedApproach's limited partners, despite their

acknowledgment of its wisdom in light of a currently tax-inefficient regime, absent a concurrent

agreement to entrench Mr. Daniel in a position of control of N.D. Management.  (*See* Am.

Compl. ¶¶ 46-47.)  The Amended Complaint alleges these refusals took place within the three

years of the filing of this action, and the claim is therefore timely.  (*See* Am. Compl. ¶¶ 46-47.)

Indeed, Defendants' accrual argument is in reality an offshoot of their broader argument that this

claim alleges the violation of a nonexistent general fiduciary duty to minimize taxes, an

argument the Court rejects for the reasons stated in Section II-C-2, *infra*.

### C.  **Legal Sufficiency**

#### 1.  *Proxy (Counts I, II and III)*

Under Delaware law, a breach of fiduciary duty claim "requires proof of two elements:

that a fiduciary duty existed and (2) that the defendant breached that duty."  *Beard Research, Inc.*

*v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010) (citing *Zrii, LLC v. Wellness Acq. Grp., Inc.*, Civil

Action No. 4374-VCP, 2009 WL 2998169, at *11 (Del. Ch. Sept. 21, 2009)).  A claim for unjust

enrichment, meanwhile, has five elements: "(1) an enrichment; (2) an impoverishment; (3) a

relationship between the enrichment and the impoverishment; (4) a lack of a justification; and (5)

the absence of a remedy at law." *Wayman Fire Prot., Inc. v. Premium Fire & Sec.*, C.A. No.

7866-VCP, 2014 WL 897223, at *29 (Del. Ch. Mar. 5, 2014) (citing *Agilent Techs., Inc. v.*

*Kirkland*, C.A. No. 3512-VCS, 2010 WL 610725, at *30 (Del. Ch. Feb. 18, 2010)). Defendants

argue that Plaintiff's proxy claims do not satisfy the elements of the aforementioned claims

because the proxy is authorized by Section 6.6 of the MedApproach LPA, which provides that:

> The fact that a General Partner or Limited Partner is directly or
> indirectly interested in or connected with any company or person
> with which or with whom the Partnership has dealings, but
> including but not limited to the payment of advisory or
> management fees, brokerage or other expenses, shall not preclude
> such dealings or make them void or voidable, and the Partnership
> or any of the Partners shall not have any rights in or to such
> dealings or any profits derived therefrom.

(Simes Decl., Ex. A, at 16). Defendants' claim that this provision contemplates and authorizes

the fees paid under the proxy and, consistent with Delaware law, displaces or eliminates any

fiduciary duties that Defendants would have to Plaintiff under the circumstances. *See* 6 Del.

Code § 17-1101(f) (providing that a limited partnership agreement may "provide for the

limitation or elimination" of fiduciary duties).   Plaintiff rejoins that this provision merely

indicates that a partner's interest in or connection to a transaction will not *automatically* make

the transaction void or voidable, such that the fiduciary duties of partners to act in the best

interests of and on terms that are fair to the partnership still control.

Issues of contract interpretation can only be resolved on a motion to dismiss when the

language of the contract is clear and unambiguous. *See Bayerische Landesbank, N.Y. v. Aladdin*

*Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012) ("[I]n the context of a motion to dismiss, 'if

a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to

14

dismiss a complaint for failure to state claim[.]'" (quoting *Eternity Global Master Fund*, 375

F.3d at 178 (2d Cir. 2004)). A contract is ambiguous where "the provisions in controversy are

reasonably or fairly susceptible of different interpretations or may have two or more different

meanings." *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192,

1196 (Del. 1992). In this case, the Court finds that Plaintiff and Defendants have proffered

reasonable interpretations of Section 6.6 and that the issue is therefore not susceptible to

resolution on a motion to dismiss. Indeed, while the provision could indeed be interpreted to bar

a challenge to the proxy based on the "direct or indirect" interest of the Defendants in the proxy,

one could argue that the provision is nevertheless inpplicable here because Plaintiff's challenge

is premised instead on the proxy's invalidity under California law. (*See* Am. Compl. ¶ 40.)

Further, this ambiguity undercuts Defendants' argument that the provision eliminates fiduciary

duties, because under Delaware such waivers must be express, clear and unambiguous. *See*

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, Civil Action No. 5502-CS, 2011 WL

3505355, at *32 (Del. Ch. Aug. 8, 2011). The Court therefore declines to dismiss Plaintiff's

proxy-related claims on the alternative ground that they fails to state a claim.

### 2. *Double Taxation (Count IV)*

As with the proxy claim breach of fiduciary duty, Defendants challenge the taxation

based breach of fiduciary duty claim on the grounds that they do not owe the asserted fiduciary

duty to Plaintiff. Defendant argues this is so because Plaintiff lacks standing to seek Daniel's

alteration of N.D. Management's corporate structure, because there is no general fiduciary duty

to minimize taxes and because the claim is nonetheless barred by the business judgment rule.

The Court considers these arguments in turn.

Under Delaware law, "[a] fiduciary is typically one who is entrusted with the power to manage and control the property of another." *Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 864 (Del. 1999). Delaware courts have held that "[o]fficers, affiliates and parents of a general partner, *may* owe fiduciary duties to limited partners *if those entities control the partnership's property*." *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1178 (Del. Ch. 1999) (latter emphasis added); *Brinckerhoff v. Enbridge Energy Co., Inc.*, C.A. No. 5526-VCN, 2011 WL 4599654, at *7 (Del. Ch. 2011 Sept. 30, 2011) ("certain entities affiliated with a corporate general partner, such as its board of directors and controller, also owe fiduciary duties to the limited partnership that the general partner manages" (citing *Wallace*, 752 A.2d at 1178)). The principle of fiduciary duty itself, "stated most generally, [is] that *one who has control property of another* may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner." *Brinckerhoff v. Enbridge Energy Co. Inc.*, 2011 WL 4599654, at *7 (emphasis added) (quoting *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48 (Del Ch. 1991)).

A straightforward application of the foregoing principles disposes of Defendants standing objection. Under Delaware law, Defendant Holdings, as the General Partner of MedApproach, has a fiduciary duty to MedApproach to manage the partnership property, including the 75% interest in N.D. Management, in the partnership's best interest. It is this duty that the Amended Complaint alleges Defendants have violated by "intentionally using [their control of N.D. Management] in a way that benefits [Defendants, i.e., by entrenching them in power] to the detriment of [MedApproach, i.e., in the perpetuation of the double-taxation regime.]" *See Brinckerhoff*, 2011 WL 4599654, at *7; (*see also* Am. Compl. ¶¶ 46-47). These allegations are

16

relatively specific and comfortably satisfy Rule 12(b)(6) muster. Moreover, that, as Defendants

contend, Daniel arguably acts in a capacity distinct from MedApproach Holdings' role as

General Partner of MedApproach when he exercises control over N.D. Management is of no

consequence at this stage, since under Delaware law affiliates (and seemingly alter egos) of a

corporate general partner can owe fiduciary duties to the partnership as well, as long as they

control partnership property. *See Wallace*, 752 A.2d at 1178; *Brinckerhoff*, 2011 WL 4599654,

at *7.[4]

Defendants' arguments that no fiduciary duty exists under the business judgment rule and

because there is no general fiduciary duty to minimize taxes are likewise unavailing. While

Delaware courts have emphasized there is no *general* duty to minimize taxes, *see, e.g.*,

*Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1345638, at *12 (Del. Ch. Mar. 30, 2012),

the claim in this case is premised on the existence of a *specific* duty to minimize taxes, tailored to

the aforementioned unique and particularized factual allegations of the Amended Complaint. In

fact, the very case on which Defendants most heavily rely in insisting that there is no general

duty to minimize taxes concedes that a failure to minimize taxes could be a breach of fiduciary

duty under certain circumstances. *See Freedman*, 2012 WL 1345638, at *12 n. 114 ("This is not

to say that under certain circumstances overpayment of taxes or a poor tax strategy might not

result from [breaches of fiduciary duty] . . . . [T]he argument advanced by the Plaintiff and

rejected by this Court envisions a broader, more generally applicable fiduciary duty to minimize

taxes.").

---

[4]       Equally unpersuasive is Defendants' citation to Delaware law's provision that "[a] partner has no
interest in specific limited partnership property." (*See* Defs' Mot. at 21 (citing 6 Del. Code § 17-701).)
This provision only implicates Mrs. Hawkins lack of an individual interest in N.D. Management as a
limited partner. The taxation claim is asserted derivatively on behalf of the partnership, however.

Dismissal is similarly not warranted under the business judgment rule.  Under Delaware law, the business judgment rule is a presumption, as opposed to a rule of law, which applies only where "there is no evidence of 'fraud, bad faith, or self-dealing,'" and can ultimately be rebutted by a showing that Defendants' breached "one of its fiduciary duties in connection with the challenged transaction." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 747 (Del. Ch. 2005) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)).  The Amended Complaint, accepted as true at this stage, alleges facts that could support both the inapplicability of the presumption, as well a breach of a fiduciary duty that would rebut the presumption even if it applied, in the Defendants' refusal to adopt an admittedly beneficial solution absent a *quid pro quo* agreement that would entrench Defendant Daniel in power.  Accordingly, the question of the business judgment rule's applicability to the instant case raises inherent factual issues incapable of resolution at this juncture. *In re Trados Inc. S'holder Litig.*, Civil Action No. 1512-CC, 2009 WL 2225958, at *9 (Del. Ch. July 24, 2009) (denying motion to dismiss because Plaintiffs' allegations, "with the benefit of reasonable inferences are sufficient, at this stage, to rebut the presumption of business judgment rule").

### 3.  Withheld Distributions (Count V and VI)

Under Delaware law, the elements of a breach of contract claim are: "(1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach." *Sustainable Energy Generations Grp. LLC v. Photon Energy Projects B.V.*, Civil Action No. 8524-VCP, 2014 WL 2433096, at *12 (Del. Ch. May 30, 2014) (citing *Osram Sylvania Inc. v. Townsend Ventures, LLC*, C.A. No. 8132-VCP, 2013 WL 6199554, at *6 (Del. Ch. Nov. 19, 2013)).  Plaintiff argues that Defendants' breached Section 6.6 of the MedApproach, DIG Equity and DIG Special Assets Limited Partnership Agreements'

18

limitation on Defendant Holdings power to hold partnership property only in connection with partnership purposes, as well as their aforementioned fiduciary duty, by withholding her distributions.  Defendants argue that no fiduciary duty or contractual provision existed or was breached because Section 5.1 of the MedApproach LPA (which is substantially identical to the other two agreements) places the issue in the General Partner's "sole discretion."  In the alternative, Defendants' argue the distributions claims fail because Plaintiff concedes that $1.3 million in distributions were returned.

With respect to Defendants' first argument, the Court finds the relevant provisions ambiguous on the question of the legitimacy of the Defendants' withholdings, and that this issue of contractual interpretation is also not susceptible to resolution on a motion to dismiss.  For example, while Section 5.1 of the MedApproach LPA does provide that the Defendants have "sole discretion" to make distributions "after setting aside whatever reserve the General Partner deems necessary for anticipated expenses, unpaid obligations, and other contingencies," (*see* Simes Decl, Ex. A, at 10), Plaintiff's argument that this section applies only to the expenses of the Partnership itself is reasonable.  That interpretation is supported by, among other things, Section 6.5 of the LPA which provides that "[t]he General Partner is authorized to pay with Partnership funds all the reasonable *expenses of the organization of the Partnership*."  (*See id.* at 16.)  Thus, the motion to dismiss must be denied because Plaintiff is entitled to the benefit of the doubt at this stage.[5]

---

[5]      The Court also agrees with Plaintiff that, even if the Court were to adopt Defendants' interpretation, Defendant could still be liable for breaches of fiduciary duty and contract via a breach of the duty to act in good faith. *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 816 (Del. 2013) ("[W]hen a contract confers discretion on one party, the implied covenant of good faith and fair dealing requires that the discretion . . . be used reasonably and in good faith." (quoting *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629 (Del Ch. 2011)); *Paige Capital Mgmt, LLC*, 2011 WL 3505355, at *32 (noting that "sole discretion"

The Court also rejects Defendants' argument that the breach of contract claim fails because Plaintiff concedes she received "approximately $1.3 million of previously withheld distributions" and is therefore "unable to assert with certainty that this was less than she was owed." (Defs.'s Mot. at 25.) [6] The Amended Complaint, accepted as true at this stage, unquestionably pleads facts giving rise to a plausible inference of a breach of contract, including that she suffered damages in the amount of at least the withheld payments. Defendants' subsequent payment of approximately $1.3 million does not vitiate this claim and is, if anything, akin to the affirmative defense of payment, something for which Defendants' bear the burden of proof and is any event not well-suited for resolution on a motion to dismiss. *See Health Solutions Network LLC v. Grigorov*, 12 A.3d 1154, at *2 n.15 (Del. 1993) (table decision) (on motion for summary judgment, rejecting argument that Plaintiff bore burden of proof on affirmative defense of payment to breach of contract claim); *see also* Fed. R. Civ. P. 8(c) (listing payment as affirmative defense to be pleaded by a defendant in an answer).

## IV.    CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss the Amended Complaint (ECF Nos. 7 & 13) is **GRANTED** as to the proxy claims (Counts I, II and III) and **DENIED** as to the proxy and withheld distributions (Counts IV, V, an VI).

---

clause did not eliminate general partner's duties of loyalty and to act in good-faith). Good-faith is, moreover, generally an issue of fact to be determined after motions to dismiss. *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, Inc.*, 624 A.2d 1199, 1208-09 (Del. 1993) (noting that good faith "is a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery" (citing *Lewis v. Fuqua*, 502 A.2d 962, 971 (Del Ch. 1985)).

[6]     To the extent Defendants' argument applies to the breach of fiduciary duty claim, it is unavailing for the simple reason that Plaintiff seeks punitive damages on that claim, (Am. Compl. ¶ 111(A)), which naturally have not yet been paid by Defendants.

**SO ORDERED.**

**Dated:** August 11, 2014

      New York, NY

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**