# JX 3

# MEDAPPROACH, L.P.

## A DELAWARE LIMITED PARTNERSHIP

# AGREEMENT OF LIMITED PARTNERSHIP



CONFIDENTIAL

MED00001706

## MEDAPPROACH, L.P.
## A DELAWARE LIMITED PARTNERSHIP

## TABLE OF CONTENTS

**ARTICLE I**
**DEFINITIONS**

1.1  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE II**
**GENERAL PROVISIONS**

2.1  Formation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.2  Partnership Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.3  Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.4  Reorganization of MedApproach, L.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.5  Fiscal Year. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.6  Place of Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.7  Duration of the Partnership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.8  Limited Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.9  Names and Addresses of Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.10 Waiver of Right to Certain Partnership Information. . . . . . . . . . . . . . . . . . . . . 6
2.11 Disclosure and Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.12 Indemnification by Partnership. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**ARTICLE III**
**CAPITAL ACCOUNTS, CAPITAL CONTRIBUTIONS,**
**PERCENTAGE INTERESTS**

3.1  Capital Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.2  Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.3  Percentage Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
3.4  Additional Capital Contributions Permitted. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
3.5  No Additional Required Contributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
3.6  No Right to Withdrawal of Capital Contributions. . . . . . . . . . . . . . . . . . . . . . . 9
3.7  Capital Contribution of the General Partner. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**ARTICLE IV**
**ALLOCATION OF PROFITS AND LOSSES**
**FOR FEDERAL INCOME TAX PURPOSES**

4.1  Initial Fiscal Year or Cumulative Loss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

MED00001707

| | | |
|---|---|---|
| 4.2 | Cumulative Profit | 10 |
| 4.3 | Allocation to Reflect Contributed Property | 10 |
| 4.4 | Section 706(d) Restrictions | 11 |
| 4.5 | Adjustment Upon Transfer of Partnership Interest or Change in Percentage Interest | 11 |

## ARTICLE V
### DISTRIBUTIONS

| | | |
|---|---|---|
| 5.1 | Distribution Ordering | 11 |
| 5.2 | Distribution to Pay Taxes | 12 |
| 5.3 | Contribution Account. | 12 |
| 5.4 | General Partner's Profit Participation | 12 |
| 5.5 | Distributions in Fiscal Year of Termination | 13 |

## ARTICLE VI
### MANAGEMENT

| | | |
|---|---|---|
| 6.1 | Authority of the General Partner | 13 |
| 6.2 | Partnership Offices and Employees | 14 |
| 6.3 | Activities of the General Partner | 14 |
| 6.4 | Partnership Expenses | 15 |
| 6.5 | Organization Expenses | 16 |
| 6.6 | Interested Partner | 16 |
| 6.7 | Investments By Affiliates and Certain Limited Partners | 16 |
| 6.8 | Exculpation | 17 |
| 6.9 | Indemnification of General Partner | 17 |
| 6.10 | Limit on Exculpation and Indemnification. | 17 |
| 6.11 | Partners' Transactions in Securities | 18 |
| 6.12 | Reliance by Third Parties | 18 |
| 6.13 | Registration of Assets | 18 |
| 6.14 | Limitation on Authority of General Partner | 19 |
| 6.15 | Restructuring | 19 |

## ARTICLE VII
### ADMISSION OF PARTNERS

| | | |
|---|---|---|
| 7.1 | New Limited Partners | 20 |
| 7.2 | New General Partner. | 20 |

ii

**ARTICLE VIII**
### WITHDRAWAL OF PARTNERS

| | | | |
|---|---|---|---|
| 8.1 | Withdrawal of a General Partner | 20 |
| 8.2 | Withdrawal of a Limited Partner | 21 |
| 8.3 | Required Withdrawal | 21 |

**ARTICLE IX**
### TERMINATION AND LIQUIDATION OF PARTNERSHIP

| | | | |
|---|---|---|---|
| 9.1 | Termination | 22 |
| 9.2 | Liquidation | 23 |
| 9.3 | Waiver of Rights to Court Decree of Dissolution | 23 |

**ARTICLE X**
### ASSIGNABILITY OF INTERESTS

| | | |
|---|---|---|
| 10.1 | Assignability of the Interest of a Limited Partner | 23 |

**ARTICLE XI**
### REPORTS TO PARTNERS

| | | | |
|---|---|---|---|
| 11.1 | Books of Account | 24 |
| 11.2 | Audit of Books of Account | 24 |
| 11.3 | Annual Reports | 24 |
| 11.4 | Interim Reports | 24 |

**ARTICLE XII**
### MISCELLANEOUS PROVISIONS

| | | | |
|---|---|---|---|
| 12.1 | Commercial Definitions | 25 |
| 12.2 | Power of Attorney. | 25 |
| 12.3 | Amendment of Agreement | 25 |
| 12.4 | Notices | 25 |
| 12.5 | Legal Effect; Governing Law; Manner of Execution | 25 |
| 12.6 | Tax Elections; Determination of Matters Not Provided for in this Agreement | 26 |

MED00001709

# MEDAPPROACH, L.P.
## A DELAWARE LIMITED PARTNERSHIP

# AGREEMENT OF LIMITED PARTNERSHIP
## OF
## MEDAPPROACH, L.P.

THIS AGREEMENT OF LIMITED PARTNERSHIP is made and entered into as of the 1st day of January, 1999, by and among MedApproach Holdings, Inc., a Delaware corporation, as General Partner and those persons whose names and addresses are listed on Exhibit A as Limited Partners. (The General Partner and the persons who sign as Limited Partners are sometimes collectively referred to as the "Partners".)

## ARTICLE I
## DEFINITIONS

### 1.1 Definitions.

As used in this Agreement, the following terms shall have the meanings set forth below:

(a)    The term "Act" shall mean the Revised Uniform Limited Partnership Act as adopted in the State of Delaware, as the same may be amended from time to time.

(b)    The term "Affiliate", with respect to any person, shall mean (i) any person directly or indirectly controlling, controlled by, or under common control with such persons, (ii) any officer, director, or partner of such person, and (iii) if such person is an officer or general partner, any company, firm, or corporation for which such person acts in any such capacity.

(c)    The term "Agreement" shall mean this Agreement of Limited Partnership, as the same may be further amended from time to time.

(d)    The term "Auditor" shall mean the independent public accounting firm selected by the General Partner.

(e)    The term "Bankruptcy" with respect to any person shall mean the adjudication of bankruptcy, declaration of insolvency, or the assignment for the benefit of creditors of or by such person, the subjection of any part or all of the property of such person to the control and direction of a receiver, which receivership is not dismissed within sixty (60) days of such receiver's appointment, or the filing by such person of a petition for relief under any federal or other bankruptcy or other insolvency law or for an arrangement with creditors.

(f)     The term "Capital Account" shall mean the financial account to be established and maintained by the Partnership for each Partner as computed from time to time in accordance with Section 3.2.

(g)     The term "Code" shall mean the federal Internal Revenue Code of 1986, as the same may be amended from time to time.

(h)     The term "Contribution Account" shall mean a financial account to be established and maintained for each Partner as computed from time to time in accordance with Section 5.3.

(i)     The term "Cumulative Profit" and "Cumulative Loss" shall mean, as of the beginning of any Fiscal Year, the cumulative algebraic sum of the Net Profit and Net Loss for all prior Fiscal Years of the Partnership (including the Partnership's share of the cumulative loss of the Prior Partnership on January 1, 1999, which share is equal to $14,126).

(j)     The term "Distribution to Pay Taxes" shall mean a distribution to Partners designated to enable payment of their federal income taxes on allocations of taxable income during the immediately preceding Fiscal Year as described in Section 5.2.

(k)     The term "Effective Date" shall mean January 1, 1999.

(l)     The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

(m)     The term "ERISA Partner" shall mean any Limited Partner which is (i) an "employee benefit plan" within the meaning of ERISA, (ii) a partnership consisting in whole or in part of such employee benefit plans which have in the aggregate made capital contributions at least equal to 25% of the total capital contributions to such partnership, (iii) an individual retirement account (IRA) or Keogh plan, or (iv) a "governmental plan" or "church plan" within the meaning of ERISA.

(n)     The term "Fiscal Year" shall mean the accounting period for the Partnership, which shall be the calendar year unless changed by the General Partner.

(o)     The term "General Partner" shall mean MedApproach Holdings, Inc. and any successor as general partner pursuant to Section 8.1.

(p)     The term "General Partner's Profit Participation" shall mean the distributions to the General Partner after all capital has been returned to the Partners as set forth in Section 5.4 and the allocations of Net Profit and Net Loss related thereto.

(q)     The term "Limited Partners" shall mean those persons admitted from time to time as limited partners of the Partnership and listed as such on Exhibit A.

2

MED00001711

(r)     The term "Net Profit" or "Net Loss" shall mean, for each Fiscal Year, an amount equal to the Partnership's taxable income or loss (after the adjustments described below) for each Fiscal Year, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(1)     Expenditures described in Section 705(a)(2)(B) of the Code shall be included as an expense in the determination of Net Profit and Net Loss;

(2)     Income exempt from taxation shall be included in the determination of Net Profit and Net Loss; and

(3)     Capital gain and capital loss shall be included in the determination of Net Profit and Net Loss.

(s)     The term "Partners" shall mean and include the General Partner and all Limited Partners.

(t)     The term "Partnership" shall mean this limited partnership, MedApproach, L.P.

(u)     The term "Partnership Interest" shall mean the interest of each Partner in the Partnership.

(v)     The term "Partner's Share of Cumulative Loss" shall mean, for each Partner, the cumulative amount of Net Loss (offset by any previous allocations of Net Profit) allocated to that Partner, including allocations of profit and loss to that Partner in the Prior Partnership allocable to this Partnership.

(w)     The term "Percentage Interest" shall mean (i) for each Partner the interest of that Partner in certain tax allocations and distributions determined pursuant to Section 3.3, and (ii) with respect to the voting and consent rights of Limited Partners, the interest of a Limited Partner based on such Limited Partner's interest in certain tax allocations and distributions determined pursuant to Section 3.3.

(x)     The term "Person" shall mean any individual, trust, partnership, limited partnership, corporation, association, limited liability company or other entity.

(y)     The term "Prior Partnership" shall mean MedApproach, L.P., a Tennessee limited partnership, which transferred certain of its assets to this Partnership as of January 1, 1999.

(z)     The term "Regulations" shall mean the Treasury Department regulations, temporary regulations and proposed regulations promulgated under the Code from time to time and any successor provisions thereto.

3

CONFIDENTIAL

MED00001712

(aa)  The term "Securities" shall mean any note, stock, treasury stock, bond, debenture, evidence of indebtedness, investment contract, or any interest or instrument commonly known as a security or any right to subscribe to or purchase any of the foregoing.

## ARTICLE II
## GENERAL PROVISIONS

**2.1  Formation.**

The original parties hereto form and constitute MedApproach, L.P., as a limited partnership (the "Partnership") on the Effective Date pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act, as amended from time to time (the "Act").

**2.2  Partnership Name.**

The name of the Partnership is MEDAPPROACH, L.P.

**2.3  Purpose.**

The purpose of the Partnership is:

(a)  To invest in a controlling interest in the entity owning the general partnership interest in Danco Investors Group, L.P., which in turn will be initially the sole member of Danco Laboratories, LLC, an entity to be formed for the purpose of manufacturing, marketing and distributing mifepristone in the United States; and

(b)  To enter into, make and perform all contracts and other undertakings, and engage in all activities and transactions as may be necessary or advisable to the carrying out of the foregoing purpose.

**2.4  Reorganization of MedApproach, L.P.**  The Partnership is created in connection with the reorganization of MedApproach, L.P., a Tennessee limited partnership (the "Prior Partnership"), wherein

(i)  all assets of the Prior Partnership are transferred to three newly formed partnerships, including the Partnership, in exchange for limited partnership interests in the new partnerships;

(ii)  the Prior Partnership is dissolved and terminated with the limited partnership interests of the new partnerships (including the Partnership) being distributed to the partners of the Prior Partnership on a non-pro-rata basis; and

4

MED00001713

(iii) the General Partner purchases the limited partnership interests of Bio-Pharm Investments, Inc., the general partner of the Prior Partnership, in each of the three new partnerships, which limited partnership interests are converted to general partnership interests in each of the three new partnerships.

## 2.5 Fiscal Year.

The Fiscal Year of the Partnership shall begin on January 1 and end on December 31 of each year, subject to change by the General Partner. The initial Fiscal Year shall commence on the Effective Date and end on December 31, 1999.

## 2.6 Place of Business.

The principal place of business of the Partnership shall be 1105 North Market Street, Suite 1300, P.O. Box 8985, Wilmington, Delaware 19801, or such other place as the General Partner may from time to time determine. The registered office of the Partnership shall be 1105 North Market Street, Suite 1300, P.O. Box 8985, Wilmington, Delaware 19801, or such other place as the General Partner may from time to time designate. Unless otherwise designated by the General Partner, the Partnership's registered agent at that address is Delaware Corporate Management, Inc.

## 2.7 Duration of the Partnership.

The term of the Partnership commenced on the Effective Date and shall continue until December 31, 2020, unless sooner terminated in accordance with the provisions of this Agreement, dissolved pursuant to the Act, or extended by amendment of this Agreement.

## 2.8 Limited Liability.

No Limited Partner shall be subject to assessment nor shall any Limited Partner be personally liable for or upon any of the debts or obligations of the Partnership or any of the losses of the Partnership beyond his obligation to contribute to the capital of the Partnership as specified in Section 3.1. No Limited Partner shall be required to return to the Partnership any amount previously distributed to him by the Partnership, except as and to the extent otherwise required by the Act or other applicable law.

## 2.9 Names and Addresses of Partners.

The names and addresses of the General Partner and of each of the Limited Partners are initially set forth on Exhibit A and shall be set forth in a schedule of the Partnership to be kept on file at all times at the principal place of business of the Partnership. A Partner may change his or her address for purposes of this Agreement upon five (5) days written notice to the General Partner.

5

MED00001714

## 2.10 Waiver of Right to Certain Partnership Information.

The Partners agree that it is in the best interests of the Partners and the Partnership that no Limited Partner shall have a right to obtain the names or addresses of any Partner or other documents or records of the Partnership reflecting such names or addresses. The Partners further agree that no Limited Partner shall have access to Exhibit A or shall be entitled to disclosure of the information set forth thereon, which information shall be maintained in the records of the General Partner; provided, however, that each Limited Partner shall be provided upon request the information pertaining to that Limited Partner set forth on Exhibit A, as well as the total for the Partnership of each item set forth on Exhibit A. To the fullest extent possible under applicable law, each Limited Partner hereby waives the right to disclosure of the names and addresses of other Partners and of any information set forth on Exhibit A the disclosure of which is prohibited by this Section 2.10.

## 2.11 Disclosure and Confidentiality.

(a) Except as and to the extent required by law or this Agreement or pursuant to the prior written consent of the General Partner, no Limited Partner shall (and each Limited Partner shall direct its representatives not to), directly or indirectly, make any public comment, statement or communication with respect to, or otherwise disclose or permit the disclosure of any aspect of the Partnership, including, without limitation, any of the terms, conditions or other aspects of this Agreement, the identity of any of the Partners, or any information provided by the General Partner either before or after the Effective Date regarding Danco Investors Group, L.P., or its Affiliates, mifepristone, and any other transactions relating hereto or thereto (collectively, the "Confidential Matters"). If a Partner is required by law (and not otherwise required by this Agreement) to make any such disclosure, it shall first provide to the General Partner the content of the proposed disclosure, the reasons that such disclosure is required by law, and the time and place that the disclosure will be made. As used herein, "representatives" means any shareholder director, officer, employee, partner, Affiliate, consultant, accountant, attorney or any other agent or representative of a partner.

(b) Except as and to the extent required by law, the Limited Partners shall not disclose or use (and each Limited Partner shall direct its representatives not to disclose or use) at any time or in any manner any information with respect to any aspect of the Confidential Matters; provided that this prohibition does not include information which such Limited Partner can demonstrate

(i) is generally available to or known by the public other than as a result of improper disclosure by such Limited Partner or

(ii) is obtained by such Limited Partner from a source other than the General Partner or the Partnership, provided that such source was not bound by a duty of confidentiality to the Partnership, provided that such source was not bound by duty of confidentiality to the Partnership or another party with respect to such information.

6

MED00001715

## 2.12 Indemnification by Partnership.

The Partnership shall indemnify DIG Equity, L.P., a Delaware limited partnership, and DIG Special Assets, L.P., a Delaware limited partnership, with respect to any claims, costs, expenses, damages or losses relating to ownership of capital stock of N.D. Management, Inc., a Cayman Islands corporation ("N.D. Management"), by the Prior Partnership or the Partnership and its related participation in the control of N.D. Management's role as general partner of Danco Investors Group, L.P. and contractual obligations relating thereto, including the arbitration award against the Prior Partnership and claims by Brian M. Freeman and related parties in connection with the foregoing. DIG Equity, L.P. and DIG Special Assets, L.P. shall be entitled to rights as third party beneficiaries under this Section 2.12 of this Agreement. The general partner is authorized to confirm to such other partnerships in writing the undertaking of the Partnership set forth in this Section 2.12.

## ARTICLE III
## CAPITAL ACCOUNTS, CAPITAL CONTRIBUTIONS, PERCENTAGE INTERESTS

### 3.1 Capital Contributions.

The amount of each Partner's initial capital contribution as of the Effective Date is set forth on Exhibit A representing the portion of that Partner's contributions to the Prior Partnership that are allocated to this Partnership.

### 3.2 Capital Accounts.

A Capital Account shall be established on the books of the Partnership for each Partner. Each such Capital Account shall be credited initially with the portion of such Partner's capital account in the Prior Partnership transferred to this Partnership as set forth on Exhibit A and subsequently each such Capital Account shall be credited with the amount of the respective Partner's contributions to the Partnership as and when made and with the respective Partner's share, determined as provided herein, of Partnership Net Profit. Each such Capital Account shall be debited with the respective Partner's share, determined as provided herein, of Partnership Net Loss and with the amount of all distributions made by the Partnership to such Partner. The Capital Accounts shall be maintained in accordance with the rules of section 1.704-1(b)(2)(iv) of the Regulations, and the items of income, profit, gain, expenditures, deductions and losses which increase or decrease such Capital Accounts shall be those items which, pursuant to such provision, affect the balance of capital accounts.

Upon the transfer of part or all of the Partnership Interest of any Partner, the proportionate amount of his respective Capital Account, determined as provided herein, shall be transferred to the transferee of such Partnership Interest; provided, however, that no transfer of such Partnership Interest shall, in and of itself, relieve the transferor Partner of any obligation to the Partnership.

7

                                                                 MED00001716

### 3.3 Percentage Interests.

The Percentage Interest shall be determined initially for each Partner as the ratio of the amount of that Partner's initial contribution to the Partnership (as reflected by his or her initial Capital Account balance) to the total of such initial contributions to the Partnership by all Partners (as reflected by the total initial Capital Account balances of all Partners), as more particularly set forth in Exhibit A. After the Effective Date, if a new Limited Partner is admitted or if additional capital contributions are made by Partners other than in proportion to their Percentage Interest, the Percentage Interests shall be adjusted as agreed in writing by the General Partner and Limited Partners holding a majority of the Percentage Interests of all the Limited Partners. Any such change in the Percentage Interests shall be reflected in the records of the General Partner on a revised Exhibit A.

### 3.4 Additional Capital Contributions Permitted.

In order to raise additional capital to make an additional investment in Danco Investors Group, L.P., to acquire assets, to redeem or retire debt or for any other Partnership purpose, the General Partner, with the written approval of a majority of the Percentage Interests of Limited Partners, is authorized to accept additional capital contributions in cash from Partners or from other Persons from time to time and to admit such Persons as additional Limited Partners. The Partnership may assume related liabilities in connection with any such issuance. In addition, the General Partner is authorized to cause the issuance of limited partnership interests having different relative rights, powers, and privileges, including preferences as to distributions and voting, and other types of securities, from time to time, to Partners or other Persons, all on terms and conditions approved in writing by a majority of the Percentage Interests of Limited Partners. In accepting additional capital contributions or in causing the issuance of limited partnership interests, the General Partner, with the written approval of a majority of the Percentage Interests of Limited Partners, is hereby expressly authorized and empowered to determine a minimum amount for any such investment by each Partner or other Person, to determine a maximum total for the additional investments, to fix the relative rights and preferences of the limited partnership interests so issued to the full extent allowable by law, and to adjust the Percentage Interests of existing Partners; provided, however, that the Capital Account balance of a Limited Partner at the time of such adjustment shall not be reduced without the written consent of that Limited Partner. The General Partner shall do all things deemed by the General Partner to be necessary or advisable in connection with any future issuance, including compliance with any statute, rule, regulation or guideline of any Federal, state or other governmental agency.

### 3.5 No Additional Required Contributions.

No capital contributions in addition to the original capital contribution may be required from any of the Limited Partners. No Limited Partner shall have any preemptive right with respect to (i) additional contributions to the capital of the Partnership, (ii) issuance of additional Partnership Interests or other interests in the Partnership, (iii) issuance of any obligations, evidences of

8

MED00001717

indebtedness or other securities of the Partnership, whether or not convertible into or exchangeable for, or carrying or accompanied by any rights to receive, purchase or subscribe to Partnership Interests or other interests in the Partnership, (iv) issuance of any right of subscription for or right to receive, or any warrant or option for the purchase of, any of the foregoing securities or (v) issuance or sale of any other securities that may be issued or sold by the Partnership.

### 3.6    No Right to Withdrawal of Capital Contributions.

No Limited Partner shall have the right to withdraw or reduce his contribution to the capital of the Partnership or to require the Partnership to make any distribution to the Partners or purchase such Limited Partner's Partnership Interest or other interest in the Partnership. No Limited Partner shall have the right to demand, to have distributed, or to receive any specific class or item of property. Except as otherwise provided in this Agreement, no Limited Partner shall have any priority over any other Limited Partner, either as to contributions of capital or otherwise.

### 3.7    Capital Contribution of the General Partner.

The General Partner may, but (except as provided in this Section 3.7) is not required to, make capital contributions to the Partnership. If the General Partner does not make capital contributions and fails to maintain a Capital Account balance equal to 1.01% of the capital contributions and Capital Account balances, respectively, of the Limited Partners, the General Partner shall be required, upon the dissolution and termination of the Partnership, to contribute for the benefit of the Limited Partners (but not for creditors of the Partnership) an amount equal to the lesser of (i) the deficit Capital Account balance of the General Partner immediately prior to the final distribution pursuant to Section 9.2 (disregarding the contribution required by this Section 3.7), but after allocation of Net Profit or Net Loss for the Fiscal Year of liquidation, or (ii) the excess of 1.01% of total capital contributions of the Limited Partners over the life of the Partnership over capital contributions by the General Partner.

## ARTICLE IV
## ALLOCATION OF PROFITS AND LOSSES
## FOR FEDERAL INCOME TAX PURPOSES

As of the end of each Fiscal Year, the Partnership's Net Profit or Net Loss, and each item of income, gain, loss and deduction related thereto, shall be allocated to the Capital Accounts of the Partners and for federal income tax purposes pursuant to the following Sections of this Article IV.

### 4.1    Initial Fiscal Year or Cumulative Loss.

Subject to the allocations described in Sections 4.3 and 4.4, for the first Fiscal Year, and any succeeding Fiscal Year if at the beginning of such Fiscal Year the Partnership has a Cumulative Loss:

9

MED00001718

(a)    if in that Fiscal Year the Partnership has a Net Loss, such Net Loss shall be allocated to all Partners in proportion to their Percentage Interests, and

(b)    if in that Fiscal Year the Partnership has a Net Profit, then

(1)    to the extent that such Net Profit reduces the Partnership's Cumulative Loss, such Net Profit shall be allocated to all Partners in proportion to their respective Partner's Share of Cumulative Loss; and

(2)    to the extent (if any) that such Net Profit results in the Partnership having a Cumulative Profit at the end of the current Fiscal Year, such Net Profit shall be allocated ten percent (10%) to the General Partner in respect of the General Partner's Profit Participation and ninety percent (90%) to all Partners in proportion to their Percentage Interests.

## 4.2   Cumulative Profit.

Subject to the allocations described in Sections 4.3 and 4.4, for any Fiscal Year if at the beginning of such Fiscal Year the Partnership has a Cumulative Profit:

(a)    if in that Fiscal Year the Partnership has a Net Profit, then such Net Profit shall be allocated ten percent (10%) to the General Partner in respect of the General Partner's Profit Participation and ninety percent (90%) to all Partners in proportion to their Percentage Interests; and

(b)    if in that Fiscal Year the Partnership has a Net Loss, then

(1)    to the extent that the Net Loss reduces Cumulative Profit and does not result in a Cumulative Loss, such Net Loss shall be allocated ten percent (10%) to the General Partner in respect of the General Partner's Profit Participation and ninety percent (90%) to all Partners in proportion to their Percentage Interests.

(2)    to the extent (if any) that such Net Loss results in the Partnership having a Cumulative Loss at the end of the current Fiscal Year, such Net Loss shall be allocated to all Partners in proportion to their Percentage Interests.

## 4.3   Allocation to Reflect Contributed Property.

If a Partner contributes property to the Partnership which has a difference between its tax basis and its fair market value on the date of its contribution, then all items of income, gain, loss, and deduction with respect to such contributed property shall be shared among the Partners, pursuant to section 704(c)(1)(A) of the Code, *solely for federal income tax purposes*, so as to take account of the variation between the basis of such property and its fair market value at the time of contribution. Such allocations shall be made in accordance with the traditional method with reasonable curative allocations described in section 1.704-3(c) of the Regulations. Any elections or other decisions

10

MED00001719

relating to such curative allocations shall be made by the General Partner. Allocations pursuant to this Section 4.3 are solely for purposes of federal income taxes and shall not affect, or in any way be taken into account in computing, any Partner's Capital Account balance or distributions pursuant to any provision of this Agreement.

**4.4    Section 706(d) Restrictions.**

In the case of a Partner who has contributed capital to the Partnership during the Fiscal Year or who became (or ceased to be) a Partner during the Fiscal Year, the allocation of federal income tax items to such Partner shall not exceed the maximum allocation permitted under section 706(d) of the Code to limit retroactive allocations.

**4.5    Adjustment Upon Transfer of Partnership Interest or Change in Percentage Interest.**

For any Fiscal Year during which a Partner transfers all or part of his Partnership Interest (including a transfer of all or part of the General Partner's Profit Participation) or during which there is a change in the Percentage Interests, the adjustment for allocation of Net Income or Net Loss and other items of income, gain, loss and deduction between the transferor and transferee Partners or regarding a Partner having different Percentage Interests during portions of the Year shall be made according to the "pro-rata method" described in section 1.706-1(c)(2)(ii) of the Regulations; that is, all such items for the entire Fiscal Year shall be allocated between the disposing and transferee Partners according to the number of days in the Fiscal Year that the Partnership Interest was held by each, or between each Partner having a different Percentage Interest during different portions of the Fiscal Year according to the number of days in the Fiscal Year that each discrete Percentage Interest was applicable to that Partner.

## ARTICLE V
## DISTRIBUTIONS

**5.1    Distribution Ordering.**

(a)    To the extent that the General Partner in its sole discretion determines that the Partnership has sufficient funds, after setting aside whatever reserve the General Partner deems necessary for anticipated expenses, unpaid obligations and other contingencies, distributions shall be made to the Partners at such times and in such amounts determined in the discretion of the General Partner, in the following order of priority:

(i)    first, a Distribution to Pay Taxes as described in Section 5.2;

(ii)    second, to all Partners in proportion to the balance of their Contribution Accounts (determined pursuant to Section 5.3) until all such balances are reduced to zero;

11

MED00001720

(iii)    third, to the General Partner in respect of the General Partner's Profit Participation, an amount determined as provided in Section 5.4; and

(iv)    fourth, to all Partners in proportion to their Percentage Interests.

## 5.2    Distribution to Pay Taxes.

The Distribution to Pay Taxes is intended to be made between January 1 and April 1 of each year to provide cash to the Partners to pay federal income taxes on amounts of taxable income allocated to the Partners from the Partnership during the immediately preceding Fiscal Year and to the extent that cash otherwise distributed during that Fiscal Year was insufficient to pay federal income taxes. Such Distribution to Pay Taxes shall be determined separately for the General Partner and for all Limited Partners, based on the allocations of taxable income to the General Partner, on the one hand, and to the Limited Partners as a group, on the other hand. Any such Distribution to Pay Taxes as determined for the Limited Partners shall be distributed to each Limited Partner in proportion to his or her Percentage Interest (regardless of whether particular Limited Partners are subject to federal income tax). The maximum amount of the Distribution to Pay Taxes pursuant to this Section 5.2 shall be determined by application of the highest marginal rate of tax in effect for the immediately preceding Fiscal Year applicable to individuals and taking into account the character of the Net Profit as ordinary income or capital gain. The maximum amount of the Distribution to Pay Taxes made to any Partner shall be reduced (but not below zero) by all other distributions made to that Partner during the immediately preceding Fiscal Year (other than any Distribution to Pay Taxes during that Fiscal Year). In determining the amount of the Distribution to Pay Taxes, the General Partner in its discretion may disregard allocations of taxable income that restore a Cumulative Loss.

## 5.3    Contribution Account.

A Contribution Account shall be established on the books of the Partnership for each Partner. Each such Contribution Account shall be credited initially with the portion of that Partner's contributions to the Prior Partnership that are allocated to this Partnership as set forth on Exhibit A. Each Partner's Contribution Account shall thereafter be credited (increased) with the amount of the respective Partner's contributions to the Partnership as and when made and with the fair market value of property contributed in kind. The balance of each Partner's Contribution Account shall be debited (reduced), but not below zero, by the amount of the Distribution to Pay Taxes distributed to such Partner pursuant to Section 5.1(a)(i) and by return of capital distributed to such Partner pursuant to Section 5.1(a)(ii).

## 5.4    General Partner's Profit Participation.

(a)    After the Contribution Account balances of all Partners have been reduced to zero by distributions pursuant to Section 5.1(a)(ii), a tentative distribution to the General Partner on account of the General Partner's Profit Participation shall be determined equal to ten percent (10%)

12

of the total amount distributed to all Partners since inception of the Partnership (including distributions made and to be made during the current year), disregarding any distributions prior to reduction of the balance of all Contribution Accounts to zero. The tentative distribution shall be reduced by the sum of:

> (i) Distributions to Pay Taxes made to the General Partner since inception of the Partnership (except Distributions to Pay Taxes debited from the General Partner's Contribution Account balance pursuant to Section 5.3); and

> (ii) All previous distributions to the General Partner on account of the General Partner's Profit Participation pursuant to this Section 5.4.

(b) The amount of the tentative distribution to the General Partner pursuant to Section 5.4(a), after the reduction pursuant to clauses (i) and (ii), shall be distributed to the General Partner in respect of the General Partner's Profit Participation.

## 5.5 Distributions in Fiscal Year of Termination.

The final distribution in the Fiscal Year of termination and liquidation of the Partnership shall be made to all Partners according to the balance of their Capital Accounts, after allocation of Net Profit or Net Loss in such Fiscal Year of liquidation and after the contribution by the General Partner (if any) required by Section 3.7.

## ARTICLE VI
## MANAGEMENT

## 6.1 Authority of the General Partner.

The management, operation, and policy of the Partnership shall be vested exclusively in MedApproach Holdings, Inc. as the General Partner and any other General Partner admitted pursuant to Article VIII of this Agreement. Each General Partner shall have the authority and power by itself on behalf and in the name of the Partnership to carry out any and all of the objectives and purposes of the Partnership set forth in Section 2.3 of this Agreement and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto. The Limited Partners shall take no part in the management or operation of the Partnership and shall have no authority or right to act on behalf or in the name of the Partnership in connection with any matter.

The General Partner may, from time to time, contract on behalf of and in the name of the Partnership with any person, including MedApproach Management, Inc., a Tennessee corporation, (any of such persons, an "Administrator") to perform the day to day administration and clerical functions of the Partnership and may delegate to the Administrator such power and authority of the

13

CONFIDENTIAL

MED00001722

General Partner as may be required to carry out such administrative functions as and to the extent not inconsistent with any existing agreement. The General Partner is expressly authorized to enter into an administrative services agreement with MedApproach Management, Inc. The fee payable to MedApproach Management, Inc. pursuant to the administrative services agreement shall be paid by the General Partner out of the fee payable to the General Partner pursuant to Section 6.4(a)(2) hereof.

**6.2    Partnership Offices and Employees.**

The General Partner is hereby authorized and empowered to carry out and implement any and all of the purposes and objectives of the Partnership, and without limiting the generality of the foregoing:

(a)    To engage personnel and to do such other acts and, subject to the terms hereof, incur such other expenses on behalf of the Partnership as it may deem necessary or advisable in connection with the conduct of Partnership affairs, and to charge to the Partnership all organizational expenses incurred by it;

(b)    To engage independent attorneys, accountants, investment advisors, custodians, agents or other persons as they may deem necessary or advisable;

(c)    To open, conduct and close accounts, including discretionary accounts, with brokers, investment advisors or other persons and to pay the fees and charges applicable to transactions in all such accounts;

(d)    To open, maintain and close bank accounts;

(e)    To register the Partnership, General Partner and employees with regulatory bodies, as necessary;

(f)    To enter into, make and perform such contracts, agreements, and such other undertakings as they may deem necessary or advisable, or as they may deem incidental to or necessary for the conduct of the business of the Partnership; and

(g)    To take any and all actions on behalf of the Partnership as a shareholder in the entity which is the general partner in Danco Investors Group, L.P.

**6.3    Activities of the General Partner.**

Although nothing herein shall require the General Partner or any of its principals or officers to devote full time or any material proportion of their time to the Partnership, each of the persons associated with the General Partner hereby agrees to use his or her best efforts in connection with the purposes and objectives of the Partnership and to devote to such purposes and objectives such

14

MED00001723

time and activity during normal business days and hours as he or she in the exercise of discretion shall deem necessary for the management of the affairs of the Partnership; provided, however, that nothing contained in this Section shall preclude any such person from acting, consistent with the foregoing, as a director, stockholder, officer or employee of any corporation, a trustee of any trust, a partner of any other partnership, or an administrative official of any other business or governmental entity, from receiving compensation for services rendered thereto, or participating in profits derived from investments in any such corporation, trust, partnership, or other business or governmental entity, or from investing in Securities or other property for his or her own account.

**6.4    Partnership Expenses.**

        (a)    Expenses to be Borne by General Partner.

        (1)    Expenses.  Subject to the reimbursement provisions of Section 6.4(a)(2) below, the General Partner shall initially pay and be responsible for all expenses relating to:

        (i)    office space, equipment, and supplies needed for the conduct of the Partnership business;

        (ii)    compensation of all persons employed by the General Partner in the conduct of the Partnership business (excepting as otherwise provided for in Section 6.4(b);

        (iii)    expenses related to investment research; and

        (iv)    telephone and other general overhead expenses not specifically set forth below as expenses of the Partnership.

        (2)    Reimbursement.  The Partnership shall pay monthly to the General Partner an allowance for expenses in an amount equal to 1/12 of 1% annual rate of the aggregate capital contributions of the Partners.  The amount of such capital contributions on the Effective Date is set forth on Exhibit A.

        Such payment shall reimburse the General Partner for the administrative and other expenses described above.  The General Partner shall be entitled to such expense reimbursement without accounting for its actual expenses, and without regard to the actual amount of expenses incurred by it.  Such expense reimbursement shall be treated as an expense of the Partnership.

        (b)    Expenses to be Borne by Partnership.  All expenses and costs incurred by the General Partner or the Partnership in the conduct of the Partnership business, other than

15

CONFIDENTIAL

MED00001724

those specifically noted in Section 6.4(a) above, shall be borne by the Partnership. Such expenses to be borne by the Partnership shall include, without limitation, the following:

   (i)  third-party audit and tax preparation services;

   (ii)  legal and other professional services;

   (iii)  costs incurred in the purchase, sale or trade, or appraisal, of Securities;

   (iv)  fees incurred in connection with the maintenance of bank or custodian accounts;

   (v)  premiums paid for insurance; and

   (vi)  expense reimbursement to the General Partner as provided in Section 6.4(a)(2) above.

## 6.5 Organization Expenses.

The General Partner is authorized to pay with Partnership funds all the reasonable expenses of the organization of the Partnership. The General Partner shall not be required to advance its own funds for such purpose. However, should the General Partner elect, in its discretion, to advance funds to the Partnership to pay such expenses, the Partnership will reimburse the General Partner as soon as possible thereafter on a dollar-for-dollar basis.

## 6.6 Interested Partner.

The fact that a General Partner or a Limited Partner is directly or indirectly interested in or connected with any company or person with which or with whom the Partnership has dealings, including but not limited to the payment of advisory and management fees, brokerage and other expenses, shall not preclude such dealings or make them void or voidable, and the Partnership or any of the Partners shall not have any rights in or to such dealings or any profits derived therefrom.

## 6.7 Investments By Affiliates and Certain Limited Partners.

The General Partner may, but is not required to, modify its General Partner's Profit Participation or expense reimbursement with respect to any Partner who is

   (1)  a limited partnership, individual, or other entity having other business arrangements with the General Partner, in order to compensate for fees or services or other consideration received by the General Partner through other means, and

16

MED00001725

(2) an individual or entity which makes, in the opinion of the General Partner, an exceptionally large capital contribution to the Partnership which improves the Partnership's cash or assets position and thereby results in extraordinary benefits to the Partnership. Such modification may be effectuated by a rebate to such Partner, a payment to that Partner of part of the General Partner's Profit Participation, or any other method reasonably determined by the General Partner; provided, however, that such modification shall not affect the rights or obligations of any Limited Partners other than the Partners as to whom the modification is effective; and such modification shall not require the consent of any Limited Partners other than the Limited Partners as to whom the modification is effective.

## 6.8 Exculpation.

The General Partner shall not be liable to any other Partner for any claims, costs, expenses, damages or losses arising out of the performance of his duties as General Partner other than those directly attributable to the General Partner's own fraud, gross negligence or willful disregard of his duties. The General Partner shall not be liable to any Limited Partner for failure to obtain the lowest negotiated brokerage commission rates, or to combine or arrange orders so as to obtain the lowest brokerage commission rates with respect to any transaction on behalf of the Partnership, or for failure to recapture, directly or indirectly, any brokerage commission for the benefit of the Partnership. The General Partner shall not be liable to any Limited Partner for claims, costs, expenses, damages or losses due to circumstances beyond his control, including but not limited to, the bankruptcy, insolvency or suspension of normal business activities of any bank, brokerage firm or transfer agent holding assets of the Partnership, or due to the negligence, dishonesty, bad faith or misfeasance of any employee, broker or other agent of the Partnership.

## 6.9 Indemnification of General Partner.

The Partnership shall indemnify and hold harmless the General Partner and its legal representatives from and against any loss or expense suffered or sustained by it, by reason of the fact that it is or was the General Partner of the Partnership, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, provided such loss or expense resulted from an honest mistake of judgment on the part of such General Partner, or from action or inaction taken in good faith for a purpose which such General Partner reasonably believed to be in, or not opposed to, the best interests of the Partnership.

## 6.10 Limit on Exculpation and Indemnification.

Notwithstanding the provisions of Sections 6.8 and 6.9 above, for so long as and to the extent required by the Securities Division of the Tennessee Department of Commerce and Insurance or the securities laws or regulations of any other state, the following provision shall be in effect and shall control the provisions of Sections 6.8 and 6.9 hereof to the extent inconsistent therewith:

17

MED00001726

The General Partner, and any Affiliate of the General Partner engaged in the performance of services on behalf of the Partnership, shall be indemnified for any liability or loss suffered by the General Partner or such Affiliate and shall have no liability to the Partnership or to any Partner for any liability or loss suffered by the Partnership which arises out of any action or inaction of the General Partner or such Affiliate if (i) the General Partner has determined, in good faith, that such course of conduct was in the best interests of the Partnership and (ii) such liability or loss was not the result of negligence or misconduct by the General Partner or such Affiliate.

Notwithstanding the foregoing, the General Partner, and any Affiliate engaged in the performance of services on behalf of the Partnership, shall not be indemnified for any liability imposed by judgment, and costs associated therewith, including attorney's fees, arising from or out of a violation of state or federal securities laws or rules. The General Partner and such Affiliates shall be indemnified for settlements and related expenses of lawsuits alleging securities law violations, and for expenses incurred in successfully defending such lawsuits, provided that a court either (i) approves the settlement which finds that indemnification of the settlement and related costs should be made, or (ii) approves indemnification of litigation costs if a successful defense is made; provided, however, that the General Partner must apprise the court of the positions of the Securities and Exchange Commission and the Tennessee Securities Division with respect to indemnification for securities laws violations before seeking court approval for indemnification.

Any amounts payable to the General Partner or its Affiliates pursuant to the foregoing are recoverable only out of the assets of the Partnership and not from the Limited Partners. The Partnership shall not incur the cost of that portion of liability insurance which insures the General Partner and its Affiliates for any liability as to which the General Partner and its Affiliates are prohibited from being indemnified..

**6.11   Partners' Transactions in Securities.**

Nothing in this Agreement is intended to prohibit any Partner from buying or selling Securities for his own account, including Securities which are the same as those held by the Partnership; but no Partner as principal shall buy Securities from or sell Securities to the Partnership.

**6.12   Reliance by Third Parties.**

In dealing with the General Partner acting on behalf of the Partnership, no person shall be required to inquire into the authority of such General Partner to bind the Partnership.

**6.13   Registration of Assets.**

Any assets owned by the Partnership may be registered in the Partnership name, or in the name of a nominee, or a "street name." Any corporation, brokerage firm or transfer agent called

18

upon to transfer any assets to or from the name of the Partnership shall be entitled to rely upon instructions or assignments signed by a General Partner or his agents without inquiry as to the authority of the person signing such instructions or assignment or as to the validity of any transfer to or from the name of the Partnership; provided, however, that any corporation, brokerage firm or transfer agent holding cash or assets of the Partnership shall be expected to comply with any special instructions concerning payment and delivery given to it in writing by a General Partner.

### 6.14 Limitation on Authority of General Partner.

The General Partner shall not have the authority without the written consent or ratification by all the Limited Partners to:

(a)     Do any act in contravention of the Certificate and Agreement of Limited Partnership or amendments thereto;

(b)     Do any act which would make it impossible to carry on the ordinary business of the Partnership;

(c)     Confess a judgment against the Partnership; or

(d)     Possess Partnership property or assign rights to specific Partnership property for other than a Partnership purpose.

### 6.15 Restructuring.

Without limiting the generality of any other provision of this Agreement:

(a)     The General Partner shall have the right to compel a dissolution or termination of the Partnership or restructuring of the Partnership's activities to the extent deemed necessary by the General Partner (after consultation with counsel) to preserve the tax status of the Partnership as a pass-through entity for federal income tax purposes or to avoid regulation of the Partnership as an investment company under the Investment Company Act of 1940, as amended.

(b)     The General Partner shall have the right to compel a dissolution and termination of the Partnership or restructuring of the Partnership's activities to the extent deemed necessary by the General Partner (after consulting with counsel) to comply with (i) any exemption under Department of Labor Regulation Section 2510.3-101 (the "plan asset" regulation) including, but not limited to, establishing a fixed percentage of total Capital Account balances permitted to be held by all ERISA Partners or other tax-exempt investors in the event that either (A) the assets of the Partnership would constitute "plan assets" for purposes of ERISA, or (B) the transactions contemplated hereunder would constitute prohibited transactions under ERISA or the Code and an exemption for such

19

transactions is not obtainable from the Department of Labor (or the General Partner determines not to seek such an exemption), or (ii) any requirement the Department of Labor might impose as a condition to granting a prohibited transaction exemption. For purposes of this Section 6.15, "ERISA Partners" shall mean any Limited Partner which is (i) an "employee benefit plan" within the meaning of ERISA, (ii) a partnership consisting in whole or in part of such employee benefit plans which have in the aggregate made capital contributions at least equal to 25% of the total capital contributions to such partnership, (iii) an individual retirement account (IRA) or Keogh plan, or (iv) a "governmental plan" or "church plan" within the meaning of ERISA.

## ARTICLE VII
## ADMISSION OF PARTNERS

**7.1    New Limited Partners.**

After the Effective Date, the General Partner may admit new Limited Partners with the written consent of a majority of the Percentage Interests of Limited Partners pursuant to Section 3.4 hereof. To accomplish the purpose of this Section 7.1 hereof, the General Partner is authorized to do all things necessary to effectuate the admission of any additional Limited Partner. Each new Limited Partner shall execute an appropriate supplement to this Agreement pursuant to which he or she agrees to be bound by the terms and provisions hereof.

**7.2    New General Partner.**

As provided in Section 8.1(b) hereof, a new General Partner shall be admitted after the withdrawal of the last General Partner if the Partners holding the required Percentage Interest agree in writing within 90 days after the withdrawal of the last General Partner to continue the business and to the appointment of the new General Partner.

## ARTICLE VIII
## WITHDRAWAL OF PARTNERS

**8.1    Withdrawal of a General Partner.**

(a)    A General Partner may withdraw from the Partnership at any time by giving written notice to all Partners.

(b)    Withdrawal of a General Partner shall dissolve the Partnership, unless within 60 days after the occurrence of an event set forth in Section 17-402 of the Act with respect to a General Partner, the remaining General Partner, if any, shall elect to continue the Partnership business; or if there is no remaining General Partner, unless Partners owning

20

more than 50% of the Percentage Interest of the remaining Limited Partners agree in writing or vote within 90 days after the withdrawal of the last General Partner to continue the business and to the appointment of another General Partner.

(c)     In the event of the withdrawal of a General Partner, the General Partner who shall have so withdrawn, subject as herein provided:

(1)     shall be and remain liable for all obligations and liabilities incurred by him as a General Partner during his membership in the Partnership;

(2)     shall be free of any obligations or liability incurred on account of the activities of the Partnership from and after the time as of which he ceased to be a General Partner of the Partnership; and

(3)     shall be entitled to receive (i) amounts due and owing to it at the date of such withdrawal and (ii) distributions for periods ended prior to such withdrawal to which it would otherwise become entitled had it remained a General Partner.

In the event that the remaining General Partner or General Partners do not elect to continue the Partnership in the manner herein provided, or all of the General Partners shall have withdrawn from the Partnership and no successor General Partner is elected pursuant to the foregoing procedure, the Partnership shall be terminated. In such event, the person or persons who were the General Partners immediately prior to such termination shall be under an obligation to terminate the affairs of the Partnership and to discharge the functions of the General Partner as provided in Sections 8.1 and 8.2 hereof. In the event that there are no such persons, the Limited Partners may select one or more persons to take such actions.

## 8.2     Withdrawal of a Limited Partner.

A Limited Partner shall not be permitted to withdraw from the Partnership prior to the termination and liquidation of the Partnership pursuant to Article IX, nor shall a Limited Partner be entitled to any distributions from the Partnership except as set forth in Article V and Section 9.2.

## 8.3     Required Withdrawal.

The General Partner may at any time for any reason require any Limited Partner to withdraw any capital not previously invested in Securities from the Partnership, or to withdraw a portion of his or her Capital Account, as of any month-end, by giving not less than 10 days' advance notice in writing to the Limited Partner thus designated. The General Partner may similarly distribute to a Limited Partner one or more of the Securities held in any account that may be designated to reflect an interest in Securities for each partner (a "Securities Account"). The Limited Partner thus designated shall withdraw from the Partnership or withdraw that portion of his Capital Account specified in such notice, as the case may be, as of the month-end fixed in such notice. The Limited

21

Partner thus designated shall be deemed to have withdrawn from the Partnership or to have made a partial withdrawal from his Capital Account, as the case may be, without further action on the part of said Limited Partner, and the provisions of Section 3.2 shall apply.

## ARTICLE IX
## TERMINATION AND LIQUIDATION OF PARTNERSHIP

### 9.1    Termination.

The Partnership shall terminate upon the expiration of its term or upon the first to occur of the following:

(a)    the withdrawal of a General Partner, unless the remaining General Partner or General Partners, if any, elect to continue the Partnership business; or if there is no remaining General Partner, unless Partners owning more than 50% of the Percentage Interest of the remaining Limited Partners agree in writing or vote within 90 days after the withdrawal of the last General Partner to continue the business and to the appointment of another General Partner;

(b)    the assignment for the benefit of the creditors of a sole remaining General Partner, the filing of a petition for the reorganization of a sole remaining General Partner, the adjudication of the bankruptcy of a sole remaining General Partner, or any other event which under applicable law would constitute withdrawal from the Partnership of a sole remaining General Partner, unless Partners owning more than 50% of the Percentage Interest of the remaining Limited Partners agree in writing or vote within 90 days after the withdrawal of the last General Partner to continue the business and to the appointment of another General Partner;

(c)    a determination by the General Partner that the Partnership should terminate; or

(d)    any event which under applicable law would result in the dissolution of the Partnership (unless this Agreement expressly provides that such event shall not result in such dissolution).

Upon the termination of the Partnership, no further business shall be done in the Partnership name except the completion of any incomplete transactions and the taking of such action as shall be necessary for the winding up of the affairs of the Partnership and the distribution of its assets.

22

CONFIDENTIAL    MED00001731

## 9.2 Liquidation.

Upon termination of the Partnership, the General Partner; or in the event that the Partnership shall have terminated pursuant to subparagraph (a) of Section 9.1 hereof, the remaining General Partner (any of the foregoing acting as a Liquidating Trustee (as hereinafter defined)); or in the event that there shall be no remaining General Partner, a person charged with carrying out the Liquidation (a "Liquidating Trustee") selected by a majority in interest of the Limited Partners, shall (i) convert to cash such of the noncash assets of the Partnership as the Liquidating Trustee deems necessary or advisable, (ii) determine the closing Capital Accounts of the Partners pursuant to Section 3.2 hereof and (iii) take the following actions and, except as otherwise required by the Act, make the following distributions out of Partnership assets in the following manner and order:

(a)    payment and discharge of all claims of creditors of the Partnership who are not Partners;

(b)    payment and discharge on a pro rata basis of the claims of all creditors of the Partnership who are Partners; and

(c)    Liquidation of the remaining assets and the distribution of the proceeds to the Partners in proportion to their closing Capital Accounts for the Fiscal Year in which termination takes place, without distinction between the General Partner and Limited Partners. Any distribution under this Section shall be accompanied by a report, as of the date of termination, containing the same information as would be contained in an annual report pursuant to Section 11.3.

## 9.3 Waiver of Rights to Court Decree of Dissolution.

The Partners agree that irreparable damage would be done to the good will and reputation of the several Partners if any Partner should bring an action in court to dissolve the Partnership. Care has been taken in this Agreement to provide what the parties feel is fair and just payment in liquidation of the interests of all Partners. Accordingly, each party hereby waives and renounces its right to such a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership.

## ARTICLE X
## ASSIGNABILITY OF INTERESTS

## 10.1 Assignability of the Interest of a Limited Partner.

The Limited Partnership Interest of any Limited Partner in the Partnership, in whole or in part, or any beneficial interest therein, may not be assigned without the prior written consent of the General Partner, which consent may be withheld in the sole discretion of the General Partner. Upon

23

MED00001732

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1  Commercial Definitions.**

For purposes of this Agreement, all commercial terms, including, but not limited to the following: "registered," "street name," and "options" shall be deemed to have their ordinary and commonly understood meanings.

**12.2  Power of Attorney.**

Each of the undersigned Limited Partners does hereby constitute and appoint the General Partner as his true and lawful representative and attorney-in-fact, in his name, place and stead to make, execute, sign and file a Certificate and Agreement of Limited Partnership and all such other instruments, documents and certificates which may, from time to time, be required by the laws of the United States of America, the State of Delaware or any other state or political subdivision in which the Partnership shall determine to do business, to effectuate, implement and continue the valid and subsisting existence of the Partnership.

**12.3  Amendment of Agreement.**

This Agreement may be amended by the General Partner in any manner that does not adversely affect the rights of any Limited Partner. This Agreement may also be amended by action taken by both (a) the General Partner and (b) the Limited Partners owning a majority of the Percentage Interests of Limited Partners at the time of the amendment, provided that such amendment does not reduce the Capital Account balance of any Limited Partner.

**12.4  Notices.**

All notices provided for under this Agreement shall be in writing and shall be sufficient if sent by first-class mail to such Partner's address as set forth in the schedule in the files of the Partnership as of the date of such notice. A notice shall be deemed to have been given to the Partnership when received by the General Partner, and to have been given to a Partner when deposited in a U.S. Post Office or a regularly maintained U.S. Postal Service letter box or when delivered in person.

**12.5  Legal Effect; Governing Law; Manner of Execution.**

This Agreement shall be binding on the executors, administrators, estates, heirs, legal survivors, successors and permitted assigns of the Partners; and shall be governed by and construed in accordance with the laws of the State of Delaware; and may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart; provided, however, that each separate counterpart shall have been executed by the

25

CONFIDENTIAL

MED00001733

General Partner and that the several counterparts, in the aggregate, shall have been signed by all of the Partners.

### 12.6 Tax Elections; Determination of Matters Not Provided for in this Agreement.

The General Partner shall be empowered to make or revoke any elections now or hereafter required or permitted to be made by the Code or any state or local tax law, and to decide in a fair and equitable manner any questions arising with respect to this Partnership or to this Partnership Agreement which are not specifically and expressly provided for in this Partnership Agreement.

26

CONFIDENTIAL

MED00001734

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                                President

By: _____
        W. Bradley Daniel, Vice President
        and Secretary

LIMITED PARTNERS:

Limited Partner Name: _____

By: _____

Name: _____

Title: _____

27

MED00001735

## Signature Page to the Agreement of Limited Partnership for
## MedApproach, L.P., a Delaware limited partnership

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                     President

By: _____
      W. Bradley Daniel, Vice President
      and Secretary

LIMITED PARTNERS:

Sharon Hawkins

CONFIDENTIAL

MED00001736

## Signature Page to the Agreement of Limited Partnership for
## MedApproach, L.P., a Delaware limited partnership

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                                President

By: _____
        W. Bradley Daniel, Vice President
        and Secretary

LIMITED PARTNERS:

MED00001737

## Signature Page to the Agreement of Limited Partnership for
## MedApproach, L.P., a Delaware limited partnership

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                              President

By: _____
        W. Bradley Daniel, Vice President
        and Secretary

LIMITED PARTNERS:

## Signature Page to the Agreement of Limited Partnership for
### MedApproach, L.P., a Delaware limited partnership

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                              President

By: _____
     W. Bradley Daniel, Vice President
     and Secretary

LIMITED PARTNERS:

## Signature Page to the Agreement of Limited Partnership for
## MedApproach, L.P., a Delaware limited partnership

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of
the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                            President

By: _____
W. Bradley Daniel, Vice President
and Secretary

LIMITED PARTNERS:

**Signature Page to the Agreement of Limited Partnership for
MedApproach, L.P., a Delaware limited partnership**

IN WITNESS WHEREOF, the undersigned have hereto executed this Agreement as of
the day and year first above written.

GENERAL PARTNER:

MEDAPPROACH HOLDINGS, INC.

By: _____
                                     President

By: _____
            W. Bradley Daniel, Vice President
            and Secretary

LIMITED PARTNERS:



CONFIDENTIAL                                            MED00001741

CONFIDENTIAL

EXHIBIT B
MedApproach, L.P. Partnership Agreement

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | Capital Account Balance (1/1/99) | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|
| General Partner: | | | | |
| MedApproach Holdings, Inc. (Address) | $ 500 | ' $ 500 | 0.01665% | 0 |
| Limited Partner: | | | | |



Total:

Aggregate Capital Contributions to Partnership (used to determine G.P.'s allowance for expenses)

MED0000001742

2063285.2

CONFIDENTIAL

**EXHIBIT B**
**MedApproach, L.P. Partnership Agreement**

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |
| **Total of all Partners:** | | | | | | |
| Aggregate Capital Contributions to Partnership = (used to determine G.P.'s allowance for expenses) | | | | | | |

2063285.2

CONFIDENTIAL

**EXHIBIT B**
**MedApproach, L.P. Partnership Agreement**

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |
| **Limited Partner:** | | | | | | |
| | | | | | | |
| **Total of all Partners:** | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

Aggregate Capital Contributions to Partnership = ▮
(used to determine G.P.'s allowance for expenses)

CONFIDENTIAL

## EXHIBIT B
### MedApproach, L.P. Partnership Agreement

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |

**Limited Partner:**

**Total of all Partners:**

Aggregate Capital Contributions to Partnership =
(used to determine G.P.'s allowance for expenses)

2063285.2

CONFIDENTIAL

## EXHIBIT B
### MedApproach, L.P. Partnership Agreement

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |
| **Limited Partner:** | | | | | | |

**Total of all Partners:**

Aggregate Capital Contributions to Partnership =
(used to determine G.P.'s allowance for expenses)

2063285.2

CONFIDENTIAL

**EXHIBIT B**
**MedApproach, L.P. Partnership Agreement**

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |

**Limited Partner:**

**Total of all Partners:**

Aggregate Capital Contributions to Partnership =
(used to determine G.P.'s allowance for expenses)

2063285.2

CONFIDENTIAL

## EXHIBIT B
### MedApproach, L.P. Partnership Agreement

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |
| **Limited Partner:** | | | | | | |
| | | | | | | |
| **Total of all Partners:** | $ | ▮ | $ ▮ | | ▮ | ▮ |
| Aggregate Capital Contributions to Partnership = ▮ (used to determine G.P.'s allowance for expenses) | | | | | | |

2063285.2

## EXHIBIT B
### MedApproach, L.P. Partnership Agreement

| Names and Addresses of Partners | Capital Contributions Allocated to this Partnership | | Capital Account Balance (1/1/99) | | Percentage Interest | Partner's Share of Cumulative Loss |
|---|---|---|---|---|---|---|
| **General Partner:** | | | | | | |
| MedApproach Holdings, Inc. (Address) | $ | 500 | $ | 500 | 0.01665% | 0 |

Limited Partner:

Total of all Partners:

Aggregate Capital Contributions to Partnership = 
(used to determine G.P.'s allowance for expenses)

2063285.2