```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                          Docket #1:13-cv-05434-
 HAWKINS,                           : ALC-SDA

                    Plaintiff,      :

   - against -                      :

 MEDAPPROACH HOLDINGS, INC., et al., : New York, New York
                                       February 27, 2023
                    Defendants.      :
                                       TELEPHONE CONFERENCE
------------------------------------ :


                     PROCEEDINGS BEFORE
            THE HONORABLE ANDREW L. CARTER, JR.,
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:          WOLLMUTH MAHER & DEUTSCH LLP
                        BY:  R. SCOTT THOMPSON, ESQ.
                        500 Fifth Avenue
                        New York, New York 10110


For Defendants:         GOODWIN PROCTER, LLP
                        BY:  JEFFREY A. SIMES, ESQ.
                             VIKTORS M. DINDZANS, ESQ.
                        The New York Times Building
                        620 Eighth Avenue
                        New York, New York 10018-1405




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    3
 2           THE CLERK:  Civil call for telephonic
 3   conference in case number 13-cv-5434, Hawkins vs.
 4   Medapproach.
 5           Counsel, please state your appearance for the
 6   plaintiff.
 7           MR. R. SCOTT THOMPSON:  Good morning.  It's
 8   Scott Thompson of Wollmuth Maher & Deutsch on behalf of
 9   the plaintiff, Sharon Hawkins.
10           THE CLERK:  And for the defendants?
11           MR. JEFFREY A. SIMES:  Good morning.  This is
12   Jeff Simes of Goodwin Procter representing the
13   defendants, Medapproach Holdings, Inc., and Bradley
14   Daniel.
15           MR. VIKTORS M. DINDZANS:  Good morning.  This
16   is Viktors Dindzans of Goodwin Procter, also on behalf
17   of defendants.
18           HONORABLE ANDREW L. CARTER, JR. (THE COURT):
19   Okay.  Good morning.  During today's conference I will
20   announce an oral opinion regarding the bench trial
21   conducted before me in April 2022.  This opinion
22   constitutes my findings of fact and conclusions of law
23   after trial pursuant to Federal Rule of Civil
24   Procedure 52(a).  In short, I find for defendants and
25   deny plaintiffs all relief.
```

```
 1                            PROCEEDINGS                    4

 2              I assume the parties' familiarity with the

 3      procedural background of this case, but I'll highlight a

 4      few important dates that are relevant to today's

 5      decision.  The lawsuit was initiated on August 2, 2013.

 6      On July 29, 2020, I entered an opinion and ordered

 7      dismissing or granting summary judgment for all claims

 8      except plaintiff's Count VIII claims against Brad Daniel

 9      from the Third Amended Complaint.  In relevant part,

10      Count VIII claims that certain 2016 and 2017 payments to

11      Mr. Daniel were unauthorized payments not in the

12      interests of ND Management, derivatively on behalf of

13      Medapproach and through Medapproach on behalf of NDM.

14      Ms. Hawkins seeks damages and disgorgement alleging the

15      payments to Mr. Daniel in 2016 and 2017, totaling

16      $431,817.52 for consulting and contract labor were in

17      violation of the duty of loyalty under Delaware law.  In

18      the summary judgment opinion I wrote that defendants had

19      not shown that the plain language of the Indemnification

20      Agreement and Certain Compensation Matters Agreement

21      unambiguously entitled Mr. Daniel to the 2016 and 2017

22      fees; therefore, summary judgment was not proper.

23              The parties then commenced a two-day bench

24      trial which was held on April 7, 2022, and May 18, 2022.

25      Following the bench trial I find that defendants have
```

1                              PROCEEDINGS                        5

2  met this burden.  The record, along with the testimony

3  and evidence presented at trial shows that Mr. Daniel

4  followed the parties' agreements and was paid an amount

5  contemplated within those contracts.  The payments at

6  issue were fair, both in terms of how they were approved

7  and in the amount paid.  Undisputed evidence that

8  plaintiff approved the compensation agreements means

9  there is no need to consider the fiduciary duty

10 analysis.  It is a contractual question in which there

11 is no dispute as to the validity of the contract or that

12 the parties agreed to it.

13          Findings of Fact:  Defendant Medapproach is a

14 Delaware limited partnership that is one of the web of

15 entities involved in the project.  Its general partner

16 is Medapproach Holdings, which is owned and controlled

17 by W. Bradley Daniel; MDM is 75% owned by Medapproach.

18 Plaintiff, Sharon Hawkins, is a limited partner of

19 Medapproach holding 88.18% of the shares therein.  She

20 is the successor-in-interest to her husband, Gregory D.

21 Hawkins.  Though Mr. Hawkins transferred his interest in

22 Medapproach to Mrs. Hawkins, he has acted as an agent

23 for Mrs. Hawkins and conducted discussions about the

24 project on her behalf.  Mr. Hawkins has remained

25 involved in managing the investment in Medapproach for

```
 1                        PROCEEDINGS                  6
 2   Mrs. Hawkins.
 3           The payments made to Mr. Daniel at issue in
 4   plaintiff's remaining claim total $431,817.52.  MDM made
 5   the payments at issue to Mr. Daniel over the course of
 6   2016 and 2017 to compensate him for services rendered
 7   from the initiation of this lawsuit in August 2013
 8   through the end of 2017.  The payments to Mr. Daniel
 9   were pursuant to an August 1, 1998, Indemnification
10   Agreement.  The Indemnification Agreement states in
11   recital F that the enterprise project believed that it
12   is in its best interest to retain the proxyholders and
13   to find, attract and retain qualified management
14   personnel for the enterprise and that it must enter into
15   this agreement and provide the indemnification
16   protection hereunder to such individuals in order to
17   attract and retain such qualified people.  The
18   Indemnification Agreement designates W. Bradley Daniel,
19   Brian M. Freeman and Jeffrey L. Rush as proxyholders
20   under the agreement.  The Indemnification Agreement
21   indemnifies Medapproach in its capacity as a stockholder
22   of the general partner NDM; the proxyholders; the
23   directors; officers; employees; agents of any of the
24   enterprise entities or their affiliates; and respective
25   heirs, personal representatives, successors, assigned,
```

1                           PROCEEDINGS                    7

2  partners, employees and agents of each of the foregoing,

3  all of whom are defined as the indemnitees under the

4  agreement.

5          The Indemnification Agreement states that the

6  payments which the indemnitor shall be obligated to make

7  hereunder shall include, without limitation,

8  compensation for time spent by a proxyholder in

9  attending to or dealing with an indemnified claim or

10 claims at the per diem rates set forth in that certain

11 letter agreement dated May 1998 by and among the general

12 partner, the proxyholders and Medapproach.

13         The May 1998 agreement referenced in the

14 Indemnification Agreement is the May 31, 1998, Certain

15 Compensation Matters Agreement that addresses certain

16 aspects of the proxyholders' compensation from the

17 project.  The relevant agreements were approved by then

18 majority owner of Medapproach, Gregory Hawkins, the

19 husband and predecessor-in-interest of plaintiff, Sharon

20 Hawkins.  The Indemnification Agreement was reviewed and

21 approved by Mr. Hawkins prior to execution.  It was

22 Mr. Daniel's consistent practice to seek Mr. Hawkins'

23 approval of agreement affecting the project.  The

24 Certain Compensation Matters Agreement to which the

25 Indemnification Agreement refers was also negotiated and

1                          PROCEEDINGS                    8

2   approved by Mr. Hawkins.  Mr. Hawkins signed a letter at

3   the time, May 28, 1998, acknowledging that he reviewed

4   and approved the Certain Compensation Matters Agreement.

5         The Certain Compensation Matters Agreement

6   states that Mr. Daniel's proxyholder fee is in respect

7   of routine management services provided by Daniel to the

8   general partner and for service as a

9   director/proxyholder.  Mr. Daniel was not expected to

10  work full time for the project or for Medapproach.

11  Nothing herein shall require the general partner or any

12  of its principals or officers to devote full time or any

13  material proportion of their time to the partnership.

14  The Indemnification Agreement provides that the rate of

15  payment for time spent by a proxyholder on litigation is

16  at the per diem rate set forth in the Certain

17  Compensation Matters Agreement.  Paragraph Two of the

18  Certain Compensation Matters Agreement lists per diem

19  rates of $2,500 per day for Dr. Rush and $3,000 per day

20  for Mr. Freeman.

21        Mr. Daniel's ordinary-course compensation was

22  not by means of a per diem rate but through an annual

23  proxyholder fee.  The Indemnification Agreement provides

24  for compensation for time spent by a proxyholder on

25  litigation.  Mr. Daniel as a proxyholder was an intended

1                           PROCEEDINGS                        9

2   indemnitee under the Indemnification Agreement and was

3   therefore entitled to compensation for time spent on

4   litigation also.  The payments that Mr. Daniel received

5   under the indemnity were approved by Dr. Jeffrey Rush,

6   the vice president of NDM and a fellow proxyholder.

7           Mr. Daniel initially deferred submitting his

8   time records for payment, as the agreement did not

9   require an accounting of time spent attending the

10  litigation.  Eventually, Mr. Daniel discussed with Dr.

11  Rush NDM's indemnity obligations and how payments should

12  be calculated.  In meetings taking place in April and

13  May 2015, for example, Mr. Daniel reiterated to Dr. Rush

14  that Mr. Daniel was recording his time and would soon

15  need to have NDM compensate him for it.  Mr. Daniel and

16  Dr. Rush discussed converting the per diem rates in the

17  Certain Compensation Matters Agreement into hourly rates

18  and agreed that that was the most reasonable and fair

19  approach.  Ms. Van Vranken and the project's outside

20  accountants, KraftCPAs, reviewed the payments to

21  Mr. Daniel for accuracy.  The rate was then adjusted for

22  inflation, as with all compensation of the project,

23  under Section 15(d) of the Danco Partnership Agreement.

24  The use of a CPI increase was a common practice at the

25  firm, as Ms. Van Vranken testified.  She testified that,

PROCEEDINGS                 10

"CPI increase is calculated on all of the management

fees and on our staff increases; that's our standard

business practice."  Inflation adjustments and

confirmation of the calculation of amounts due was

performed by the project's outside accountants,

KraftCPAs.

Conclusions of Law:  The parties agree that

Delaware law governs the parties' relationship and

evaluations of plaintiff's claims.  The payments to

Mr. Daniel were explicitly contemplated in the

Indemnification Agreement and the payments made to him

were calculated based on the terms of agreements that

Mr. Hawkins approved.  The Delaware Supreme Court has

held that, "There can be no breach of a fiduciary duty

where the subject of the claim is expressly addressed by

contract." See *Nemec v. Shrader*, 991 A. 2d, 1120 at 1129

Delaware (2010).  When parties cover a particular

subject in an express manner, their contractual choice

governs and cannot be supplanted by the application of

inconsistent fiduciary duty principles that might

otherwise apply as a default.

The evidence presented shows that the parties

contracted for indemnity in relation to time spent on

litigation for Mr. Daniel.  The Indemnification

```
 1                      PROCEEDINGS                11
```

 2   Agreement defines Mr. Daniel as one of the proxyholder
 3   in Recital D.  By virtue of certain irrevocable proxies
 4   given by Mr. Pike and Medapproach, the general partner
 5   is in effect managed by or under the direction of three
 6   individuals:  W. Bradley Daniel, Brian M. Freeman, and
 7   Jeffrey L. Rush, collectively "the proxyholders."  The
 8   agreement then indemnifies the proxyholders for time
 9   spent in attending to or dealing with litigation in
10   relation to their work (at Section 2).  "The payments
11   which the indemnitors shall be obligated to make
12   hereunder shall include, without limitation,
13   compensation for time spent by a proxyholder in
14   attending to or dealing with such claim or claims as the
15   per diem rates set forth in the Certain Compensation
16   Matters Agreement."

17          When the Indemnification Agreement wished to
18   specifically carve an individual out, it did so.  See
19   the Indemnification Agreement, Section 2, stating that,
20   "In no event would Joseph Pike or individuals related to
21   him be indemnified."  Mr. Daniel was designated as a
22   proxyholder and thus was entitled to indemnification as
23   defined in the agreement.

24          The 2016 and 2017 fees were calculated using
25   relevant information from the Certain Compensation

```
 1                          PROCEEDINGS                    12
 2  Matters Agreement approved by a disinterested director
 3  in Dr. Jeffrey Rush and then adjusted for inflation per
 4  the project's standard practice and a relevant Operating
 5  Agreement.  This calculation was then reviewed by the
 6  project's CFO and its outside accountants for accuracy.
 7  Because the payments at issue were explicitly
 8  contemplated in the Indemnification Agreement, I do not
 9  consider plaintiff's fiduciary duty claims.  For the
10  reasons stated above, plaintiff's claims are denied.
11  That is the ruling of the Court.  We are adjourned.
12  Thank you.
13            (Whereupon, the matter is adjourned.)
14
15
16
17
18
19
20
21
22
23
24
25
```

13

## C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Hawkins v.

Medapproach Holdings, Inc. et al, Docket #13-cv-05434-

ALC-SDA, was prepared using digital transcription

software and is a true and accurate record of the

proceedings.




Signature_____*Carole Ludwig*_____

                Carole Ludwig

Date:    March 27, 2023